# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Gabriel*, 2020 IL App (1st) 182710

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MICHELLE GABRIEL, Petitioner-Appellee, and HASSAMO SHAMOUN, Respondent-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-18-2710 |
| Filed | March 31, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-D2-30433; the Hon. Jeanne M. Reynolds, Judge, presiding. |
| Judgment | Affirmed in part; reversed in part; remanded with directions. |
| Counsel on Appeal | Alexander Michael, of Michael D. Ettinger and Associates, of Palos Heights, for appellant.<br><br>Marvin J. Leavitt, David C. Adams, and Laura M. Presto, of Grund & Leavitt, P.C., of Highland Park, for appellee. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1        In this appeal from a judgment of dissolution of marriage, respondent Hassamo (Sam) Shamoun challenges the trial court's awards of maintenance, child support, and attorney fees to petitioner Michelle Gabriel, as well as the court's division of the marital estate. For the following reasons, we affirm the trial court's awards of maintenance and attorney fees, but we reverse and remand with respect to the child support award because the court miscalculated Sam's guideline support obligation. We conclude that we lack jurisdiction to review the trial court's order dividing the marital estate because Sam's notice of appeal did not identify that part of the court's judgment.[1]

¶ 2                                I. BACKGROUND
¶ 3                A. Petition for Dissolution of Marriage and Order of Protection
¶ 4        Sam and Michelle were married in August 2008 and have two minor children. In October 2017, Michelle filed a petition for dissolution of marriage, seeking maintenance, child support, and attorney fees, as well as an equitable division of the parties' marital estate. She also asked the court to grant her significant decision-making responsibilities for the children.

¶ 5        In November 2017, at Michelle's request, the trial court entered a two-year order of protection prohibiting Sam from harassing, stalking, or physically abusing Michelle; granting Michelle sole possession of the parties' marital residence; and prohibiting Sam from entering the residence or Michelle's place of employment.

¶ 6                B. Temporary Support Order and Attorney Fees for Noncompliance
¶ 7        In March 2018, the trial court granted Michelle's request for temporary maintenance and child support, ordering Sam to pay $1500 per month in unallocated support. When Sam failed to comply, Michelle filed a petition for a rule to show cause to hold him in contempt and requested attorney fees for her efforts to enforce the order. In June 2018, the court ordered Sam to pay Michelle $3083.33 in overdue support and $1600 in attorney fees.

¶ 8        In August 2018, in her posttrial petition for attorney fees, Michelle alleged that Sam had not complied with the court's June 2018 order. The court allowed Sam time to respond and set the matter for a hearing, but Sam failed to file a response or appear for the hearing. The court found that Sam had not complied with the June 2018 order and directed him to pay the amount due by October 2. When Sam again failed to comply, the court extended the deadline to October 8. On that date, Sam paid the past-due support and related attorney fees.

¶ 9        Michelle then filed a petition for additional attorney fees arising from her attempts to enforce the June 2018 order. On November 19, 2018, the court ordered Sam to pay Michelle an additional $1917.50 in attorney fees within seven days. When Sam failed to comply with that order, the court increased the amount of attorney fees by $225, issued and stayed a body attachment, and indicated that the stay would be lifted if Sam failed to pay the full amount by December 4, 2018. The record does not reveal whether Sam complied with this order.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 10                                    C. Discovery, Trial, and Posttrial Petition for Attorney Fees

¶ 11         In February 2018, Michelle served a notice on Sam to produce discovery documents, but neither the notice nor any description of the documents requested is included in the record on appeal. Sometime before trial, Michelle filed a motion *in limine* related to Sam's failure to comply with her discovery requests. The motion is likewise missing from the record on appeal. In addition, there is no transcript of any hearing on the motion in the record. The trial court granted the motion based on Sam's "deficient production of documents" and failure "to provide updated discovery." As a result, the court barred Sam "from testifying as to new information not timely disclosed or offering documents into evidence other than what had been previously produced."

¶ 12         The trial court held a two-day bench trial in August 2018, but there is no trial transcript in the record on appeal. Following the trial, Michelle filed a petition for attorney fees. Sam did not respond to the petition, and neither he nor his counsel appeared at the hearing on the petition. The record contains no transcript of the hearing, which was held in Sam's absence.

¶ 13                                    D. The Trial Court's Judgment

¶ 14         The trial court entered judgment on November 28, 2018, dissolving the parties' marriage and resolving the ancillary issues of maintenance, child support, division of the marital estate, attorney fees, and allocation of parenting time and parental decision-making responsibilities.

¶ 15         The court began by determining the parties' respective incomes for maintenance and child support purposes. The court found that Michelle's gross annual income was $27,000. Sam's income, however, was "difficult to ascertain" because his testimony "was inconsistent, contradicted by other evidence, and not credible." As the court recounted, Sam testified that he was employed as a Christian apologist and Bible teacher, but he "could not remember" his income "for 2016, 2017, or 2018 year to date." Although Sam's 2016 W-2 form reported gross income of $116,500, he testified (and Michelle and the court accepted) that his gross income that year was only $100,000.

¶ 16         The income reported on Sam's 2017 W-2 form "dropped to $50,081 without explanation." Sam claimed that his 2017 income was even lower than the amount reported on his W-2, but he "could not credibly explain the discrepancy or inconsistencies [in] his statements." In addition, Sam conceded that he "regularly receives gifts and donations" not reported on his W-2 forms, but he testified that he "does not consider [those sums] to be income." Although "[n]o records of the actual amount of this additional income" were presented at trial, the court was able to identify an additional $15,078.24 of income that Sam received in 2017 based on deposits made to one of his checking accounts, raising his 2017 gross income to at least $65,159.24. However, as the court noted, Sam testified that gifts and donations were also deposited to his Patreon accounts,[2] but he "provided no documents" for those accounts and could not remember "what the exact amounts of deposits [to them] have been from year to year."

---

[2]Patreon "is a membership platform *** that provides *** tools for creators to run a subscription content service" and "allows creators and artists to earn a monthly income by providing exclusive rewards and perks to their subscribers." *Patreon*, Wikipedia, https://en.wikipedia.org/wiki/Patreon (last visited July 20, 2020) [https://perma.cc/4D45-WLPG].

¶ 17    Because Sam's income remained "difficult to ascertain with specificity" due to his lack of credibility and the fact that he had "additional income available to him other than what [he] disclosed," the court deemed it appropriate to use the average of his identifiable income in 2016 and 2017 when determining his maintenance and child support obligations. Using this method, the court found that Sam's gross annual income for support purposes was $82,579.62, although for unexplained reasons it used the slightly lower figure of $82,572 in the worksheets it used to calculate its maintenance and child support awards.

¶ 18    After determining the parties' respective incomes, the court concluded that Michelle was entitled to maintenance based on "her historical earnings[,] her current income and potential earning capacity especially in comparison to Sam's[,] the standard of living by the parties during the marriage[,] and her needs as established during the marriage." Under the statutory guidelines, the court calculated the amount of maintenance by subtracting 20% of Michelle's gross annual income from 30% of Sam's gross annual income but capping the sum of the resulting maintenance award and Michelle's gross income at 40% of the parties' combined gross income. See 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017). Applying this formula, the court awarded Michelle maintenance of $1402.42 per month for 43 months. See *id.* § 504(b-1)(1)(B) (calculating duration of maintenance based on length of marriage).[3]

¶ 19    The trial court then calculated Sam's guideline child support obligation. That figure is calculated by taking each party's monthly net income; adding those numbers to arrive at the parties' combined monthly net income; determining the parties' combined support obligation based on a schedule established by the Illinois Department of Healthcare and Family Services, which "reflects the percentage of combined net income that parents living in the same household in this State ordinarily spend on their child[ren]" (*id.* § 505(a)(1)); and then calculating each party's share of the combined support obligation based on that party's share of their combined net income (see *id.* § 505(a)(1.5)).

¶ 20    The court calculated each party's net income by subtracting the party's federal and state income taxes, Social Security and Medicare taxes, and self-employment taxes from each party's gross income. According to the court's calculations, Sam's monthly net income was $5998, and Michelle's monthly net income was $2470. The court then multiplied Sam's share of the parties' combined net income (70.83%) by the parties' combined support obligation under the guidelines schedule ($1956) to arrive at Sam's guideline child support obligation of $1385 per month. The court concluded, however, that an "upward deviation" from the guidelines was "appropriate" based on "the children's needs and [the] history of this case, Sam's demonstrated history of non-compliance with support, *** Sam's lack of overnights and [Michelle's] disproportionate exercise of parenting time, and [the] fact that Sam receives additional income which he has not disclosed." Based on those findings, the court ordered Sam to pay $1500 per month in child support.

¶ 21    The court then divided the parties' marital estate. The court found that the estate consisted of (1) the marital residence, valued at $142,000, with a balance of $80,000 on the mortgage; (2) a 2017 Chevy Tahoe, valued at $27,000, with the same amount remaining on the car loan;

---

[3]Later in the judgment order, the court stated that the amount of maintenance was $1421 per month. On remand, the trial court should modify the judgment to correct the discrepancy.

(3) a 2014 Ford Escape, of undetermined value;[4] (4) various bank accounts, of unnoted value; (5) credit card debt of $13,280; and (6) a debt to the Internal Revenue Service of approximately $4000 related to Sam's 2016 income taxes. The court allocated 60% of the equity in the marital residence to Michelle and 40% to Sam. However, to provide Michelle with sole ownership of the residence, the court transferred Sam's share of the equity to her and correspondingly reduced the duration of Sam's maintenance obligation to 24.3 months. The court awarded the Chevy Tahoe and its accompanying debt to Michelle and awarded the Ford Escape and any debt owed on it to Sam. The court allocated responsibility for the credit card debt to Michelle and the IRS debt to Sam. And the court awarded each party "any [and] all bank accounts, financial accounts, [and] any [other] asset in his or her name, possession, and control."

¶ 22 With respect to attorney fees, the court found that Michelle "lacks the ability to contribute further to her attorney[ ] fees without undermining her financial stability and security, whereas Sam has the ability to make a contribution to Michelle's attorney[ ] fees ***, as well as pay his own, without undermining his financial stability or security." Moreover, the court found that Sam had "needlessly increased the cost of [the] litigation" by failing to comply with discovery orders, failing to make court-ordered support payments and pay the attorney fees assessed against him for his noncompliance, and engaging in conduct that necessitated the entry of an order of protection against him. The court found that the attorney fees incurred by Michelle were reasonable and ordered Sam to contribute $15,000 toward those fees.

¶ 23 Finally, the court allocated the majority of parenting time and sole responsibility for making significant parental decisions to Michelle, with parenting time on alternating weekends allocated to Sam.

¶ 24 E. Notice of Appeal

¶ 25 On December 26, 2018, Sam filed a notice of appeal. Although Sam was represented by counsel at trial and is represented by counsel on appeal, he filed his notice of appeal *pro se*, using the standard form provided by the circuit court clerk's office. Sam indicated on the notice that he was appealing a judgment or order entered by Judge Reynolds, but he left the space for the "[d]ate of the judgment/order being appealed" blank. In the space for describing the relief sought on appeal, Sam wrote: "(1) Attorney fees for the petitioner, (2) Alimony, (3) Child support is too high."

¶ 26 II. ANALYSIS

¶ 27 On appeal, Sam challenges the trial court's maintenance, child support, and attorney fee awards, as well as the court's disproportionate division of the parties' marital residence. He contends that the court erred in using the average of his 2016 and 2017 incomes for maintenance and child support purposes and in granting Michelle's motion *in limine,* which he asserts prevented him from introducing evidence of his diminished 2018 income. He further contends that the trial court erred in calculating his guideline child support obligation by failing to account for the maintenance awarded to Michelle and that the court abused its discretion in deviating upward from the guidelines. In addition, Sam contends that the court failed to make

---

[4]The trial court noted that Sam "did not offer any testimony as to the value of" the Ford Escape and was barred from testifying about any debt owed on the vehicle due to "his failure to disclose [that information] in discovery."

sufficient findings in support of its decision to award a disproportionate share of the marital residence to Michelle. Finally, Sam argues that the trial court's award of attorney fees to Michelle was excessive and improper in light of what he deems to be a lack of disparity in the parties' respective incomes.

¶ 28 Before turning to Sam's contentions of error, we first address two threshold issues raised by Michelle concerning the adequacy of Sam's notice of appeal and the sufficiency of the record on appeal.

¶ 29                                    A. Appellate Jurisdiction

¶ 30 Michelle argues that we lack appellate jurisdiction because Sam's notice of appeal failed to specify the judgment from which he was appealing or his requested relief. "The filing of a notice of appeal is the jurisdictional step which initiates appellate review." (Internal quotation marks omitted.) *People v. Smith*, 228 Ill. 2d 95, 104 (2008). The notice must "specify the judgment or part thereof *** appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). "[A] notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal." *Smith*, 228 Ill. 2d at 104. A notice of appeal should be construed liberally and considered as a whole. *Id.* at 104-05.

¶ 31 Michelle argues that Sam's notice of appeal does not accord us jurisdiction to review the trial court's judgment because it failed to adequately identify or describe the judgment. As Michelle notes, Sam's notice of appeal did not provide the date of the judgment being appealed. But Sam did identify the trial court's awards of attorney fees, maintenance (which he called alimony), and child support as the subjects of his appeal, and each of those awards is contained in the trial court's final judgment of November 28, 2018. Considered as a whole and liberally construed, Sam's notice of appeal sufficiently identified the portions of the trial court's final judgment that addressed maintenance, child support, and attorney fees.

¶ 32 Michelle also argues that Sam's notice of appeal was insufficient because it did not specify the relief sought on appeal. But "the failure to include a prayer for relief in a notice of appeal is an error of form not substance and, absent prejudice to the appellee, does not deprive the appellate court of jurisdiction." *Maywood-Proviso State Bank v. Village of Lisle*, 234 Ill. App. 3d 206, 215 (1992). Michelle has not alleged, much less shown, that she was prejudiced by Sam's failure to specify his requested relief in the notice of appeal.

¶ 33 We thus have jurisdiction to review the parts of the trial court's final judgment that awarded Michelle maintenance, child support, and attorney fees. We likewise have jurisdiction to review the trial court's order granting Michelle's motion *in limine*, because "[a]n appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment." *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1023 (2009). However, we lack jurisdiction to review the portion of the trial court's judgment that divided the parties' marital estate, including the marital residence, because Sam's notice of appeal, even liberally construed, did not fairly identify that part of the judgment. See *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 434 (1979) ("When an appeal is taken from a specified judgment only, or from a part of a specified judgment, the court of review acquires no jurisdiction to review other judgments or parts thereof not so specified or not fairly to be inferred from the notice as intended to be

- 6 -

presented for review on the appeal.").[5]

¶ 34                                B. The Record on Appeal

¶ 35     Michelle next argues that we should dismiss the appeal or summarily affirm the trial court's judgment because Sam failed to present an adequate record on appeal. A record on appeal should contain "the entire original common law record" and "any report of proceedings." Ill. S. Ct. R. 321 (eff. Feb. 1, 1994). "The common law record includes every document filed and judgment and order entered in the cause and any documentary exhibits offered and filed by any party." *Id.* The report of proceedings should "include all the evidence pertinent to the issues on appeal." Ill. S. Ct. R. 323(a) (eff. July 1, 2017). Here, the record on appeal does not include a transcript of the trial or any other hearing held in the trial court, nor does it contain any of the exhibits introduced by the parties during trial. Moreover, while Sam challenges the trial court's order granting Michelle's motion *in limine*, the motion itself is absent from the record on appeal.

¶ 36     Sam insists that the deficiencies in the record must be attributed to the clerk of the trial court, who is responsible for "prepar[ing] and certify[ing] the record on appeal." Ill. S. Ct. R. 324 (eff. July 1, 2017). But it is the appellant's "burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Material omissions in the record prepared by the clerk should have been corrected by Sam through a motion to supplement the record. See Ill. S. Ct. R. 329 (eff. July 1, 2017). Sam further asserts that he was unable to include a trial transcript in the record on appeal because no court reporter was present for the trial. But that does not explain Sam's failure to "prepare a proposed report of proceedings [or bystander's report] from the best available sources, including recollection," and "present [it] to the trial court for *** approval" and certification. Ill. S. Ct. R. 323(c) (eff. July 1, 2017).

¶ 37     Nevertheless, although the record on appeal is deficient, the deficiency does not fully inhibit our ability to review the issues presented on appeal. In particular, we are aided by the recitation of facts in the trial court's judgment, which recounted many aspects of the testimony and evidence presented at trial. For that reason, we decline to dismiss the appeal or summarily affirm. However, we will resolve "[a]ny doubts which may arise from the incompleteness of the record" against Sam. *Foutch*, 99 Ill. 2d at 392. Moreover, where the record on appeal is insufficient to support any of Sam's contentions of error, we will "presume[ ] that the order entered by the trial court was in conformity with [the] law and had a sufficient factual basis." *Id.*

¶ 38                                C. Averaging Sam's Income

¶ 39     Sam's first contention is that the trial court erred in calculating his income for maintenance and child support purposes by using the average of his 2016 and 2017 income. "The trial court has the discretion to determine the amount and duration of an award of maintenance," and its decision "will not be reversed on appeal absent an abuse of discretion." *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1041 (2008). A trial court abuses its discretion when its ruling

---

[5]For the same reason, we lack jurisdiction to review any of the trial court's orders assessing attorney fees against Sam other than the fee award contained in the court's final judgment, but we do not construe Sam's appeal as challenging any of those separate orders.

is "arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view." (Internal quotation marks omitted.) *In re Estate of Andre T.*, 2018 IL App (1st) 172613, ¶ 34. In determining the amount of maintenance to award, "a trial court should consider the parties' income[s] at the time of dissolution as well as their potential incomes." *In re Marriage of Walker*, 386 Ill. App. 3d at 1041. We defer to a trial court's "factual finding[s] as to the parties' annual incomes" as long as the findings are not against the manifest weight of the evidence. *Id.*

¶ 40     Here, the trial court decided to rely on the average of Sam's 2016 and 2017 income after concluding that Sam's current income was difficult to ascertain due to his lack of credibility and failure to disclose all his sources of income. Sam argues that mere difficulty in ascertaining his current income cannot justify the decision to use the average of his prior years' incomes. But when a party's current income "is difficult to ascertain or uncertain, a court may consider [the party's] past earnings." *In re Marriage of Karonis*, 296 Ill. App. 3d 86, 92 (1998). Moreover, when a party's income "fluctuates from year to year, income averaging is an approved method to apply" in determining the party's current income. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1025 (2003). The trial court's decision to average Sam's 2016 and 2017 income was supported by its finding that the income reported on Sam's 2017 W-2 dropped by nearly half from the income reported on his 2016 W-2 "without explanation."

¶ 41     Sam asserts that income averaging was inappropriate here because his income did not fluctuate but simply declined. But the same was true in *In re Marriage of Garrett*, where the appellate court approved a trial court's decision to average a party's income over a three-year period during which the party's income declined each year. *Id.* Sam also argues that the trial court should have used at least three years' worth of income in its calculation. Although there is support for the proposition that "[a]t least the three prior years should be used to obtain an accurate income picture," the number of years to consider generally "must be left to the discretion of the trial court, as facts will vary in each case." *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103 (1995). While Sam suggests that the court should have included his 2018 income in its income-averaging calculation, there is no indication in the record that Sam presented evidence of his 2018 income. Indeed, as the trial court recounted, Sam testified that he could not remember what his 2018 income was. Accordingly, we cannot say that the trial court abused its discretion in considering only Sam's 2016 and 2017 income when calculating his average income for support purposes.[6]

¶ 42     Nor can we say that the trial court abused its discretion in using the income-averaging method in the first place. The court had good reason to question the accuracy of Sam's reported income. When determining a party's income for support purposes, a court "may consider the party's credibility and forthrightness in disclosing his or her income." *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 109 (2000). Here, the court found that Sam's testimony concerning his income lacked credibility, and we defer to that assessment. See *In re Marriage of Walker*, 386

---

[6]Although the parties' 2015 joint income tax return was apparently introduced at trial, Sam does not argue that the trial court erred in excluding his 2015 income from its income-averaging calculation. In any event, because the 2015 tax return is not in the record on appeal and because the record does not otherwise reveal the amount of Sam's income in 2015, there is no basis for concluding that the inclusion of that year's income in the trial court's calculation would have materially lowered Sam's average income.

Ill. App. 3d at 1042 ("A reviewing court will defer to a trial court's determination of credibility because the trial court is in the best position to observe the conduct and demeanor of witnesses.").

¶ 43 In addition, the trial court noted that in 2017, the year Michelle filed for divorce, Sam's reported income "dramatically dropped *** without explanation." Sam asserts that the court ignored testimony that his income decreased in 2017 due to a loss of donors. But without a trial transcript or bystander's report in the record, we have no way of assessing this contention and must presume that the trial court's decision was supported by the evidence. See *Foutch*, 99 Ill. 2d at 392. In any event, the trial court did discuss Sam's testimony about his reliance on donors for income, but the court noted that Sam failed to produce records documenting "the actual amount of this additional income." While the court was able to identify a portion of the donations Sam received in 2017 based on deposits to his checking account, it could not calculate the amount of donations Sam received through his Patreon accounts because Sam provided no records for those accounts and claimed that he did not remember how much money was deposited in the accounts.

¶ 44 For all these reasons, we cannot say that the trial court abused its discretion in calculating Sam's income for maintenance and child support purposes by using the average of his 2016 and 2017 income.

¶ 45                                    D. Motion *in Limine*

¶ 46 In a related argument, Sam challenges the trial court's order granting Michelle's motion *in limine*, which barred Sam "from testifying as to new information not timely disclosed or offering documents into evidence other than what had been previously produced." Sam asserts that the order prevented him from introducing evidence of his diminished 2018 income and was a disproportionate sanction for his discovery violations.

¶ 47 A trial court is "vested with broad discretion to grant a motion *in limine* as part of its inherent power to admit or exclude evidence." (Internal quotation marks omitted.) *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 35. In addition, a trial court is authorized "to prescribe sanctions, including barring witnesses from testifying, when a party fails to comply with discovery deadlines." *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 31 (citing Ill. S. Ct. R. 219(c)(iv) (eff. July 1, 2002)). "The imposition of sanctions is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Id.*

¶ 48 The record on appeal is inadequate to support Sam's contention of error. For one thing, there is no indication in the record that the court's order granting Michelle's motion *in limine* barred Sam from presenting evidence or testimony concerning his 2018 income. The motion itself is not part of the record on appeal. Nor does the record contain any written or oral ruling by the court on the motion. In its judgment, the trial court recounted that it had granted Michelle's motion *in limine* due to Sam's "deficient production of documents" in response to Michelle's discovery requests. But nothing in the record describes the documents requested by Michelle or the extent of Sam's failure to comply with her requests.

¶ 49 Moreover, while the court's judgment states that Sam was barred "from testifying as to new information not timely disclosed or offering documents into evidence other than what had been previously produced," it does not indicate that Sam was prohibited from introducing evidence or testimony concerning his 2018 income. In fact, as a whole, the court's judgment suggests that Sam was *not* prevented from offering such testimony or evidence. For instance,

when discussing its distribution of the marital estate, the court expressly noted that Sam had been barred from testifying about any debt owed on his vehicle due to his failure to disclose such information in discovery. In contrast, when the court recounted Sam's testimony about his income, it noted Sam's claim that he could not remember what his income was "for 2016, 2017, or 2018 year to date." Notably, the court did not state that Sam had been prevented from testifying about or otherwise offering evidence concerning his 2018 income. In short, the record on appeal fails to support Sam's assertion that he was barred from offering testimony or evidence concerning his 2018 income.

¶ 50    In addition, even if we assume that the trial court did bar Sam from offering testimony or evidence related to his 2018 income, there is no indication in the record on appeal that Sam preserved a challenge to the court's order by making an offer of proof concerning the testimony or evidence he wished to present. "When a motion *in limine* is granted, the key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court." *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003). "An offer of proof informs the trial court, opposing counsel, and the reviewing court of the nature and substance of the evidence sought to be introduced" and "is the key to preserving a trial court's alleged error in excluding evidence." *Colella v. JMS Trucking Co. of Illinois, Inc.*, 403 Ill. App. 3d 82, 93 (2010). Because the record on appeal does not show that Sam made an offer of proof at any time, we must conclude that he has forfeited any challenge to the trial court's order granting Michelle's motion *in limine*. See *Guski v. Raja*, 409 Ill. App. 3d 686, 695 (2011) ("Absent an adequate offer of proof, the issue is unreviewable on appeal.").[7]

¶ 51    Finally, even if we were to excuse Sam's forfeiture, the record on appeal is insufficient to address the merits of his claim. The record contains no description of the scope of Michelle's discovery requests or any evidence concerning the circumstances of Sam's noncompliance with those requests. Neither Michelle's motion *in limine* nor the transcript of any hearing on the motion is in the record. Nor does the record identify the evidence or testimony that Sam was barred from presenting as a sanction for his discovery violation. In light of these deficiencies in the record, there is no basis for us to conclude that the trial court abused its discretion in granting the motion *in limine*. In the absence of a sufficient record on appeal, we must "presume[ ] that the order entered by the trial court was in conformity with [the] law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392.

¶ 52                                        E. Child Support

¶ 53    Sam next challenges the trial court's child support order. He argues that the court erred in calculating his guideline support obligation and that the court further erred in deviating upward from the guideline amount.

¶ 54    When determining child support, a trial court must begin by calculating each party's basic child support obligation under the statutory guidelines. See 750 ILCS 5/505(a)(1.5) (West Supp. 2017). The guidelines utilize "a schedule of basic child support obligations that reflects the percentage of combined net income that parents living in the same household in this State

---

[7]Even on appeal, Sam does not state what evidence concerning his 2018 income he wished to offer at trial. He asserts that his income in 2018 was substantially lower than his income in previous years, but the only concrete evidence he cites is his 2018 tax return, which he concedes was not available at the time of trial.

- 10 -

ordinarily spend on their child[ren]" (*id.* § 505(a)(1)), and "provide for an award of child support on an income-shares model, which takes into account the incomes of both parents" (*In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 16). To calculate each party's basic child support obligation under the guidelines, the court first "determine[s] each parent's monthly net income" and "add[s] the parents' monthly net incomes together to determine the combined monthly net income of the parents." 750 ILCS 5/505(a)(1.5)(A), (B) (West Supp. 2017). The court then "select[s] the corresponding appropriate amount from the schedule of basic child support obligations based on the parties' combined monthly net income and number of children" and "calculate[s] each parent's percentage share of the basic child support obligation" based on each parent's percentage share of the parties' combined monthly net income. *Id.* § 505(a)(1.5)(C), (D).

¶ 55     The statute creates "a rebuttable presumption" that the amount of child support calculated under the guidelines "is the correct amount of child support." *Id.* § 505(a)(3.3). A trial court may deviate from the guidelines to avoid "inequitable, unjust, or inappropriate" results, but any such deviation must "be accompanied by written findings by the court specifying the reasons for the deviation and the presumed amount under the child support guidelines without a deviation." *Id.* § 505(a)(3.4). In deciding whether to deviate from the guidelines, a court may consider whether "extraordinary medical expenditures [are] necessary to preserve the life or health" of either parent or any child, whether any child will require "additional expenses" due to "special medical, physical, or developmental needs" and "any other factor" that would render application of the guidelines "inappropriate" in light of the "best interest[s]" of the children. *Id.* Such other factors include, but are not limited to, "the financial resources and needs" of the parents and children, "the standard of living the child[ren] would have enjoyed had the marriage *** not been dissolved," and "the physical and emotional condition of the child[ren] and [their] educational needs." *Id.* § 505(a)(2). The party seeking a deviation from the guidelines bears the burden of demonstrating that "compelling reasons" justify a deviation. *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 35.

¶ 56     Ultimately, the trial court has discretion to determine the appropriate amount of child support, and we will not reverse its determination absent an abuse of discretion. *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 66. The same is true when the trial court decides to deviate from the statutory guidelines. See *In re Marriage of Hill*, 2015 IL App (2d) 140345, ¶ 28 ("[A] trial court's decision whether to deviate from the statutory guidelines in setting child support will not be disturbed absent an abuse of discretion."). Whether the court applied the correct statutory formula in determining the parties' respective incomes for child support purposes, however, is a question of law that we review *de novo*. See *In re Marriage of McGrath*, 2012 IL 112792, ¶ 10; *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 18.

¶ 57     Here, the court plainly erred in calculating the parties' respective net incomes for child support purposes. Under the version of the statute then in effect, "gross income" was defined as "the total of all income from all sources," including "spousal maintenance received pursuant to a court order in the pending proceedings." 750 ILCS 5/505(a)(3)(A) (West Supp. 2017). "Net income" was defined as gross income minus federal and state income taxes, Social Security and Medicare taxes, and any self-employment taxes. *Id.* § 505(a)(3)(B). In addition, the statute provided that "[o]bligations pursuant to a court order for spousal maintenance in the

pending proceeding *** payable to the same party to whom child support is to be payable *** shall be deducted from the parent's gross income." *Id.* § 505(a)(3)(F)(II).[8]

¶ 58    In calculating the parties' respective net incomes for child support purposes, the trial court failed to account for the amount of maintenance it ordered Sam to pay to Michelle. As the worksheet that the trial court attached to its judgment makes clear, the court failed to include the amount of maintenance in Michelle's income or subtract it from Sam's income. By doing so, the court attributed too large a share of the parties' combined net income to Sam and thus overstated his "percentage share of the [parties' combined] basic child support obligation." *Id.* § 505(a)(1.5)(D).[9]

¶ 59    Michelle does not address Sam's contention that the court erred in calculating the guideline child support amount by failing to account for the maintenance award. Instead, she contends that Sam forfeited appellate review of the issue by failing to adequately cite authority in support of his argument. We decline to find the issue forfeited. Sam's opening brief asserted that the trial court miscalculated the parties' respective net incomes for child support purposes by failing to subtract the monthly maintenance award from Sam's income and add it to Michelle's income. He cited one of the statutory provisions discussed above concerning the inclusion of a maintenance award in the recipient's net income for child support purposes and directed our attention to the page of the record containing the trial court's child support calculation worksheet. He also explained the effect that the court's error had on its determination of his guideline child support obligation. While Sam's discussion of the issue was not extensive, that is largely a function of the relatively straightforward nature of the error he asserts. Because Sam's brief adequately set forth his contention of error "and the reasons therefor, with citation of the authorities and the pages of the record relied on" (Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018)), we find that he did not forfeit review of the issue.

¶ 60    Sam further argues that the trial court abused its discretion in deciding to deviate upward from the amount of child support it calculated under the guidelines. Michelle contends that Sam waived appellate review of this issue because he failed to raise it in the trial court. We note that Sam was not required to raise the issue in a posttrial motion in order to preserve it for review. See *Elsener v. Brown*, 2013 IL App (2d) 120209, ¶ 53 ("A posttrial motion *** is not necessary to preserve issues in an appeal from a bench trial." (citing Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994))). We acknowledge, however, that Sam's failure to provide a trial transcript or an appropriate substitute makes it impossible to determine whether he raised the issue in the trial court before entry of judgment. While we generally would resolve any doubts arising from the incompleteness of the record against Sam (see *Foutch*, 99 Ill. 2d at 392), we decline to do so in this instance. "It is well settled that the rules of waiver and forfeiture are limitations on the parties and not the courts." *In re Davion R.*, 2019 IL App (1st) 170426, ¶ 59. Because we

---

[8]The current version of the statute reflects changes in the federal tax code affecting the tax treatment of maintenance awards but does not alter the basic principle that the calculation of each party's income for child support purposes should account for any maintenance awarded by the court. See 750 ILCS 5/505(a)(3)(A), (a)(3)(B), (a)(3)(F)(II) (West 2018).

[9]The court attributed approximately 71% of the parties' combined net income to Sam. Based on our rough calculation (keeping all of the trial court's other figures constant), properly accounting for the maintenance award would reduce Sam's share of the parties' combined net income to approximately 54% and reduce his guideline child support obligation from $1385 to $1062.

ultimately conclude that a remand is necessary due to the trial court's error in calculating Sam's guideline child support obligation, we choose to address Sam's further contention concerning the propriety of deviating from the guidelines to provide guidance to the parties and the trial court on remand.

¶ 61    As noted above, there is a rebuttable presumption under the statute that a guidelines child support award is appropriate (750 ILCS 5/505(a)(3.3) (West Supp. 2017)), and a trial court may deviate from the guidelines only if it makes written findings specifying its reasons for concluding that application of the guidelines would be "inequitable, unjust, or inappropriate" (*id.* § 505(a)(3.4)). The trial court here made the necessary written findings, and we cannot say that it abused its discretion in determining that a deviation was appropriate. The court found that an upward deviation from the guidelines was appropriate in light of (1) "the children's needs and [the] history of this case," (2) "Sam's demonstrated history of non-compliance with support," (3) "Sam's lack of overnights and [Michelle's] disproportionate exercise of parenting time," and (4) "[the] fact that Sam receives additional income which he has not disclosed." These grounds relate to "the financial resources and needs" of the parents and children (*id.* § 505(a)(2)(A), (B)) and the "best interest[s]" of the children (*id.* § 505(a)(3.4)(C)) and are thus appropriate bases for finding that a deviation from the guidelines is warranted.

¶ 62    Sam does not dispute that "the children's needs" are an appropriate factor to consider in determining whether a deviation from the guidelines is appropriate. He argues, however, that the trial court did not make adequate written findings because it did not expressly identify what needs of the children warranted the deviation. But the statute requires the trial court to make "written findings *** specifying the reasons for the deviation" (*id.* § 505(a)(3.4)), which the trial court did. The statute does not require the court to include "a specific finding in its order regarding *** the actual needs of the children." *Melamed v. Melamed*, 2016 IL App (1st) 141453, ¶ 33.

¶ 63    Sam cites *In re Marriage of Jelinek*, 244 Ill. App. 3d 496 (1993), where the appellate court reversed a trial court's decision to deviate from the guidelines. There, although the trial court "noted that it had considered the relevant factors," the "record reveal[ed] that little evidence was adduced as to the needs of the children." *Id.* at 508-09. Here, in contrast, we cannot say that there was inadequate evidence of the children's needs presented at trial because Sam failed to include a trial transcript or an appropriate substitute in the record on appeal. As such, we must "presume[ ] that the order entered by the trial court was in conformity with [the] law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392.

¶ 64    Sam argues that the additional circumstances cited by the trial court—his access to undisclosed income and history of noncompliance with his support obligations, and Michelle's disproportionate exercise of parenting time—are not appropriate factors to consider as grounds for deviating from the guidelines. But these circumstances bear on "the financial resources and needs of the parents," which is a "relevant factor[ ]" to consider in determining whether a deviation from the guidelines is appropriate. 750 ILCS 5/505(a)(2)(B) (West Supp. 2017). Sam's access to undisclosed income is plainly relevant to assessing his financial resources. Moreover, while the trial court considered Sam's failure to fully disclose his income as a reason justifying its decision to average his income for support purposes, nothing in the statute prohibited the court from further considering this factor when deciding whether to deviate from the guidelines. Similarly, Sam's history of noncompliance with his support obligations is a relevant circumstance to consider when assessing Michelle's financial resources, which were

likely depleted during the period in which she was forced to financially support the children without assistance from Sam and expend time and resources seeking to enforce Sam's compliance with the court's orders.

¶ 65 Finally, Michelle's disproportionate exercise of parenting time affects both her financial resources and her financial needs, as it is likely to force her to choose between altering her work schedule or securing outside childcare. Sam argues that the trial court erred in considering this factor because a separate statutory provision addresses circumstances in which the parties exercise relatively proportional amounts of parenting time. See *id.* § 505(a)(3.8). That provision increases the parties' combined basic support obligation by 50% when "each parent exercises 146 or more overnights per year with the child" and computes each parent's child support obligation "by multiplying that parent's portion of the shared care support obligation by the percentage of time the child spends with the other parent." *Id.* But nothing in the statute prohibits the trial court from considering the inverse situation—where one party exercises all or nearly all parenting time—as a relevant factor bearing on that party's financial needs and resources when determining whether a deviation from the guidelines is appropriate.

¶ 66 While we conclude that the trial court did not abuse its discretion in deciding to deviate upward from the guidelines when making its child support award, we nevertheless must reverse and remand for further proceedings. Because the trial court relied in part on considerations related to Sam's income when determining that a deviation was appropriate, we cannot be confident that the court's decision to deviate from the guidelines or the extent of its deviation was not influenced by its error in calculating the parties' net incomes and corresponding miscalculation of Sam's guideline support obligation. On remand, the trial court should properly calculate Sam's guideline support obligation in the manner discussed above and reconsider whether and, if so, to what extent a deviation from the guidelines is appropriate.

¶ 67                                                   F. Attorney Fees

¶ 68 Finally, Sam challenges the trial court's award of attorney fees to Michelle. We will not reverse a court's order awarding attorney fees "absent an abuse of discretion." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13.

¶ 69 A trial court may order one party to contribute "a reasonable amount" to the other party's attorney fees. 750 ILCS 5/508(a) (West 2018). "Any award of contribution to one party from the other party shall be based on the criteria for division of marital property *** and, if maintenance has been awarded, on the criteria for an award of maintenance." *Id.* § 503(j)(2); see also *id.* § 508(a) (providing that contribution to opposing party's attorney fees "may be awarded *** in accordance with subsection (j) of Section 503"). The criteria for dividing marital property include, among other things, "the relevant economic circumstances of each spouse"; "the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties"; and "the reasonable opportunity of each spouse for future acquisition of capital assets and income." *Id.* § 503(d)(5), (8), (11). Similarly, the criteria for awarding maintenance include "the income and property of each party"; "the needs of each party"; and "the realistic present and future earning capacity of each party." 750 ILCS 5/504(a)(1)-(3) (West Supp. 2017). "The party seeking an award of attorney fees must establish her inability to pay and the other spouse's ability to do so." *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). "[A] party is unable to pay if, after consideration of all the relevant statutory factors, the court finds that requiring the party to pay

the entirety of the fees would undermine his or her financial stability." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19.

¶ 70 Here, the trial court ordered Sam to contribute $15,000 toward Michelle's attorney fees after finding that Michelle "lacks the ability to contribute further to her attorney[ ] fees without undermining her financial stability and security" and that "Sam has the ability to make a contribution to Michelle's attorney[ ] fees" and "pay his own [fees], without undermining his financial stability or security." The court also found that Sam "needlessly increased the cost of [the] litigation" through his failure to comply with discovery orders, his noncompliance with court-ordered support payments, and by engaging in conduct that necessitated the entry of an order of protection against him. Finally, the court concluded that the attorney fees incurred by Michelle were reasonable.

¶ 71 Sam argues that the fee award is "unreasonable and excessive given the income of the parties." He contends that, after accounting for the maintenance awarded to Michelle, his income is only slightly higher than Michelle's. He further suggests that the attorney fees incurred by Michelle were not reasonable. Finally, he contends that the trial court's reliance on his failure to comply with discovery requests as a basis for the fee award was improper because the court had already granted Michelle's motion *in limine* as a sanction for his discovery violations. We conclude that Sam forfeited any challenge to the trial court's fee award and that, in any event, the incomplete record on appeal does not support a finding that the trial court abused its discretion.

¶ 72 To begin, Sam forfeited any challenge to the trial court's award of attorney fees by failing to respond to Michelle's fee petition or appear for the hearing on the petition. By his inaction, Sam necessarily failed to raise in the trial court any of the arguments he now presents on appeal. A party's "[f]ailure to raise an issue before the trial court forfeits review of that issue on appeal." *Finko v. City of Chicago Department of Administrative Hearings*, 2016 IL App (1st) 152888, ¶ 24. The purpose of this rule "is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Sam asserts that the trial court's order was "so arbitrary [and] prejudicial" that we should "at least remand for further consideration." But Sam had ample opportunity to raise his objections to Michelle's request for attorney fees in the trial court. After choosing to forgo that opportunity, he is not now entitled to a do-over.

¶ 73 Even if we were to excuse Sam's forfeiture, the incomplete record on appeal makes it impossible for us to say that the trial court abused its discretion in awarding Michelle attorney fees. Because the record contains neither a trial transcript nor a transcript of the hearing on Michelle's fee petition, we do not know the amount of attorney fees that either party incurred and thus cannot determine what percentage of Michelle's fees (or the parties' combined fees) Sam was ordered to pay. Nor is there any evidence in the record that would allow us to evaluate Sam's contention that the fees Michelle incurred were unreasonable. In addition, while Sam argues that the fee award was excessive considering the parties' respective incomes, that is simply one of many factors to consider in making a fee award. Sam fails to address—and without a transcript of the trial or fee hearing we are unable to evaluate—"the relevant economic circumstances of each spouse"; "the reasonable opportunity of each spouse for future acquisition of capital assets and income"; or "the age, health, station, occupation, ***

- 15 -

vocational skills, employability, estate, liabilities, and needs of each of the parties." 750 ILCS 5/503(d)(5), (8), (11) (West 2018). Due to the incomplete record, we cannot say that the trial court's award of attorney fees to Michelle was unreasonable or arbitrary. Instead, we must "presume[ ] that the order entered by the trial court was in conformity with [the] law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392.

¶ 74 Finally, Sam offers no authority for his contention that the trial court erred in considering his discovery violations when awarding attorney fees to Michelle. "[A] party forfeits review of an issue on appeal by failing to support its argument with citation to authorities." *International Union of Operating Engineers Local 965 v. Illinois Labor Relations Board, State Panel*, 2015 IL App (4th) 140352, ¶ 20. In any event, we note that "[u]nnecessarily increasing the cost of litigation is a relevant factor in *** the allocation of attorney fees." *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 117.

¶ 75                                        III. CONCLUSION
¶ 76 For the foregoing reasons, we affirm the trial court's awards of maintenance and attorney fees, but we reverse the court's award of child support and remand for further proceedings. As explained above, on remand the trial court should recalculate Sam's guideline child support obligation, taking into account the court's award of maintenance when determining the parties' respective net incomes, and should then reevaluate whether a deviation from the guidelines is appropriate. The trial court should also correct the discrepancy in its judgment identified above concerning the amount of the maintenance award.

¶ 77 Affirmed in part; reversed in part; remanded with directions.