NOTICE

Decision filed 05/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250330-U

NO. 5-25-0330

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MARIFE DALRYMPLE, n/k/a Marife Sabillano, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 13-F-1092 |
| | ) | |
| VACLAV ONDRISEK, | ) | Honorable |
| | ) | Thomas B. Cannady, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in its determination of the amounts owed by the respondent to the petitioner, and did not abuse its discretion in determining the respondent's child support obligation to the petitioner. The judgment of the circuit court is affirmed.

¶ 2    The respondent, Vaclav Ondrisek, appeals *pro se* from the St. Clair County circuit court's orders of March 21, 2025, determining arrearages owed by the respondent to the petitioner, Marife Dalrymple, and modifying his child support obligation. He further appeals from the circuit court's April 16, 2025, order denying his motion to reconsider. For the reasons explained below, we affirm each order.

1

¶ 3                                    I. BACKGROUND

¶ 4      This case began on September 4, 2013, when the petitioner, through the Illinois Department

of Healthcare and Family Services, filed a petition to establish parentage. The petitioner asked the

circuit court to determine that the respondent was the father of her minor daughter, and to order

that the respondent pay prospective and retroactive child support, medical support, reasonable

expenses relating to the petitioner's pregnancy and delivery, and the costs of the paternity

proceedings. The circuit court ordered genetic testing, which established the respondent to be the

minor's father.

¶ 5      On March 24, 2014, after the respondent failed to appear in court, the circuit court entered

a default order requiring him to make monthly child support payments in the amount of $1,000 to

the petitioner on a temporary basis. The court reserved ruling on the issues of retroactive child

support and medical expenses, and further ordered the respondent to provide proof of income. Two

days later, the respondent filed an appearance in the case through counsel. On April 16, 2014, the

respondent filed a motion to set aside the default child support order. Following a hearing, the

circuit court entered an order on June 9, 2014, requiring the respondent to make monthly child

support payments of $840 on a temporary basis.

¶ 6      After the circuit court granted the respondent's attorney's motion to withdraw, the

respondent filed a *pro se* correspondence to the court challenging the temporary child support

order, which the court took to be a motion for reconsideration. The circuit court held a hearing on

permanent child support on February 20, 2015, at which it also addressed the respondent's

motion.[1] Following the hearing, the circuit court entered an order on February 24, 2015. The court

---

[1]On that date, the circuit court also entered an order deciding the custody dispute between the parties, awarding sole custody of the minor to the petitioner and establishing a visitation schedule for the respondent. There are various other orders entered in this case regarding parenting time and decision-making authority, which we do not mention here as they are not relevant to this appeal.

listed its findings regarding the parties' respective incomes, and concluded that there was no reason to deviate from the statutory guidelines in determining child support. The court thus set the respondent's child support obligation to the petitioner at a monthly amount of $700, retroactive to October 1, 2013. The court also continued the matter on the issue of the amount of child support arrearage accrued. After a hearing on July 31, 2015, the circuit court entered an order determining the arrearage amount.

¶ 7    The case proceeded over the next few years, including two unsuccessful appeals filed by the respondent, as well as various motions seeking to, *inter alia*, reduce his child support obligation. The circuit court set the matter for hearing on all pending motions on January 5, 2018. On that date, the court ordered the parties to participate in mediation to attempt to resolve outstanding issues of parenting time and parental responsibilities.

¶ 8    The court also entered an order stating that the respondent "agrees that he owes $1,499.09" to the petitioner in child support, due to a failed payment from his bank account. He was ordered to pay the petitioner in that amount within 60 days. The circuit court's order further stated that, in addition to the aforementioned child support arrearage, the respondent owed the petitioner child support in the total amount of $19,990.44, which included a principal amount of $18,519.21 plus $1,471.23 in interest. The respondent was also found to be in contempt of court for failing to pay child support, and his child support obligation was reduced to $0 due to his unemployment. The circuit court stated that he had a duty to find new employment and was ordered to notify the petitioner once he had done so.

¶ 9    On March 9, 2018, the petitioner filed a motion stating that 60 days had passed and the respondent had not made the required payments. He also did not submit to mediation. The petitioner asked the court to enforce its January 5, 2018, order against the respondent. That same

3

day, the parties appeared before the circuit court and the court entered an order stating that it would not set any further proceedings until the parties completed mediation as ordered.

¶ 10    On March 27, 2024, the petitioner filed a motion to modify child support and determine arrearages, stating that, on information and belief, the respondent's income had increased since the January 5, 2018, order reducing his child support obligation to $0, and the minor's needs had increased as well. She therefore asked the court to determine the respondent's new child support obligation and arrearages and set a payment schedule, that he be deemed responsible for a majority of the minor's school and extracurricular expenses, and that the petitioner be awarded attorney fees and costs for bringing her motion. The respondent filed a combined response and motion to dismiss the case, in which he wrote that he believed he owed the petitioner a remaining amount of "around $10,000," of which he asked to be relieved.

¶ 11    Following a September 11, 2024, pretrial conference on the petitioner's motion to modify child support, the circuit court entered an order stating that "arrearage will not be addressed by the Court as the order entered on [January 5,] 2018 specifically sets forth the judgment on arrearage and said judgment will continue to accrue interest post-judgment according to statute." The court set the matter for a hearing to determine child support retroactive to March 27, 2024, "or some time between," adding that it would not address child support prior to the filing date of the petitioner's motion.

¶ 12    The circuit court held an evidentiary hearing on the outstanding child support issues on March 19, 2025. At the hearing, the court explained that, per its September 11, 2024, order, it would not be addressing the arrearage amount as determined in the court's January 5, 2018, order. The circuit court stated that the 2018 order set forth the $19,990.44 judgment entered against the respondent and in favor of the petitioner, representing the principal and interest owed up to that

4

date. Thus, the court would be addressing the issues of current child support and current arrearage amount, as requested in the petitioner's March 27, 2024, motion, and would not consider evidence or testimony relating to any time prior to the date of the motion.

¶ 13    At the hearing, the circuit court asked the petitioner whether she had received the $1,499.09 amount owed by the respondent and referenced in the January 5, 2018, order. She answered that she had not. The petitioner further testified that she had not received any child support payments from the respondent that were not reflected in the child support summary payment history that the court had reviewed, which showed that his last payment occurred in 2017. She added that he also paid her approximately $700 in 2022, not through the child support system. The respondent did not dispute the petitioner's testimony regarding her income.

¶ 14    The respondent testified that he had no income, and did not currently have a work permit due to his immigration status. He stated that he was therefore legally unable to obtain employment. He further testified that he had used some of his approximately $200,000 in "emergency money" to purchase stocks. He said that he did not earn any money from those investments, but instead incurred losses. The respondent submitted tax returns and investment statements to the court, but did not submit the financial affidavit that he was instructed to provide. He also submitted various documents reflecting his expenses.

¶ 15    After hearing the respondent's testimony regarding his income, the circuit court asked the respondent to submit any evidence pertaining to payments made toward the January 5, 2018, judgment. The respondent submitted documentation of what he alleged were payments he had made, which child support services (CSS) never recorded. He also showed the court documentation of four payments he had made between 2019 and 2022, which the court determined that the respondent was requesting as a set-off to his remaining arrearages.

¶ 16    The respondent was asked about how he earned a living, since he claimed to be unable to work and to have no income. He stated that he lived with a roommate who covered his utility bills, and that he still had approximately $200,000 in savings. Regarding the latter, the respondent argued that his savings were not income, because he needed that money in case of an emergency. The circuit court took the matter under advisement.

¶ 17    The circuit court entered an order on March 21, 2025. In this order, the court addressed its prior order of January 5, 2018, which stated that the respondent admitted to owing $1,499.09, and ordered him to pay the petitioner $19,990.44. The court found that this prior order did not reduce the former amount to judgment, nor was there any credible evidence that the respondent ever paid this amount. The court thus ruled that the amounts owed by the respondent to the petitioner, as set forth in the January 5, 2018, order, were (1) $19,990.44, plus 9% postjudgment interest; plus (2) $1,499.09, which was not subject to any postjudgment interest; less (3) set-offs of various amounts, representing four payments made by the respondent between 2019 and 2022; less (4) set-offs for 9% postjudgment interest on the aforementioned set-off amounts. As stated in the circuit court's order, the total arrearage owed by the respondent came out to $28,548.73, and did not include the respondent's current monthly child support obligation.

¶ 18    The circuit court entered a separate order that same date, making findings as to the parties' respective incomes based on their testimony and the evidence submitted for the hearing. Regarding the respondent, the circuit court found that he had a gross monthly income approximately between $1,000 and $1,250, which represented interest from assets. The court wrote that, per his testimony, the respondent "has assets of approximately $200,000 [in] investments, [and] receives [a] return on investments that [the] court deems income; no evidence as to amounts." The circuit court ordered the respondent to pay child support, retroactive to March 27, 2024, in the amount of

6

$144.35 per month. Lastly, the circuit court denied all other outstanding prayers for relief not addressed in its March 21, 2025, orders.

¶ 19 The respondent filed a motion to reconsider[2] its March 21, 2025, order on April 11, 2025. In it, he argued (1) that the circuit court should not have counted the $200,000 he had in investments as income, because it was "emergency fund money"; (2) that he had paid the $1,499.09 amount to the petitioner through CSS, but they lost his payment; (3) that he had no income from which to pay the $19,990.44 plus interest; and (4) that he had significant medical debts due to heart surgery and related health issues, and, as an undocumented immigrant, he was not eligible for social security or disability benefits.

¶ 20 The circuit court entered an order on April 16, 2025, stating that it "has performed extensive proceedings and hearings as to the issues before this Court and finds no reason to conduct any further hearings as to the pending issues presented" at the March 19, 2025, hearing. The court thus denied the respondent's motion, and reiterated that its March 21, 2025, orders remained in effect. This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22 The respondent raises four arguments on appeal. The first is that, in calculating his income and assets, the circuit court erroneously included his investments in the amount of $200,000. He contends that, per his testimony and supporting documentation presented at the March 19, 2025, hearing, he had no income and the $200,000 represented emergency savings, a part of which he invested in stocks "out of financial desperation," and which resulted in losses. Second, he argues that the circuit court incorrectly copied information from the CSS website to determine that he

_____

[2]The motion was styled as a motion for clarification, but asked the court to reconsider its decisions, and the circuit court treated the pleading as a motion to reconsider.

7

owed the petitioner $1,499.09, but CSS had "failed to deduct the $1,499.09 from their records as per court order." He adds that the court then added this figure again in its March 21, 2025, order, double-charging him.[3]

¶ 23    Third, he reasserts his position that it was improper for the circuit court to impose postjudgment interest "when there was no showing that [he] had income and willfully failed to pay." He further states that he filed a motion to modify child support because he lacked a steady source of income, and the circuit court delayed ruling on it for two years, eventually granting him a reduction in his child support obligation. However, interest accrued on his unpaid, pre-reduction child support during the two years that he was waiting for the court's ruling. Lastly, the respondent argues that, because the circuit court denied his motion to reconsider—which he styled as a motion for clarification—without providing any instruction, he lacked a clear understanding of how to begin making payments in accordance with the court's ruling.

¶ 24    The Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2022)) provides for the computation of a party's child support obligation, beginning with a determination of each parent's income. *Id.* § 505(a)(1.5). The Marriage Act creates a rebuttable presumption that the amount of child support calculated under the guidelines "is the correct amount of child support." *Id.* § 505(a)(3.3); *In re Marriage of Gabriel*, 2020 IL App (1st) 182710, ¶ 55. Whether the court follows or deviates from the statutory guidelines, it has discretion to determine the appropriate amount of child support, and we will not reverse its determination absent an abuse of that discretion. *Gabriel*, 2020 IL App (1st) 182710, ¶ 56. In determining income for the purposes of child support, the court "has the authority to compel a party to pay at a level

---

[3]While he does not explicitly claim on appeal that he did, in fact, pay the $1,499.09 amount, he implies it in his argument, and he asserted as such in his motion to reconsider the circuit court's March 21, 2025, order.

commensurate with his earning potential," and may impute income to a party if his "present income is uncertain." *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 26.

¶ 25    Here, the circuit court found that the respondent was unemployed, but had income in the form of returns on investments from his approximately $200,000 in invested savings. Regarding the circuit court's findings based on the testimony and evidence presented at the hearing, we defer to the court's credibility determinations and weighing of competing evidence. This is because, as the finder of fact, the circuit court was best positioned to observe the conduct and demeanors of the parties. *Gabriel*, 2020 IL App (1st) 182710, ¶ 42 (citing *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1042 (2008)).

¶ 26    During the hearing, the respondent testified that he incurred only losses from his investments, but also admitted that he still had approximately $200,000 in savings. Therefore, by his own testimony, the respondent did have some assets. While he seeks to distinguish this money by characterizing it as "emergency savings," he offers no support for his position that such a distinction excludes the amount from his income. Nor could he, as our supreme court has explained that "for purposes of determining statutory child support obligations, the General Assembly has adopted an expansive definition of what constitutes 'net income.' 'Net income' is defined broadly to encompass 'the total of all income from all sources,' " minus various deductions. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004) (quoting 750 ILCS 5/505(a)(3) (West 2002)).

¶ 27    The circuit court agreed with the respondent that he had no "income" in the form of a salary received from an employer. However, the circuit court properly looked at all other sources in making its income determination. The court found that there was credible evidence and testimony indicating that the respondent had savings and/or investments, although there was insufficient evidence of his return on investments. We find that the respondent has not raised any meritorious

9

issue regarding the circuit court's calculation of his income for the purposes of determining child support.

¶ 28 As for the respondent's second argument, the record contradicts his position that the circuit court ordered him to pay the $1,499.09 amount twice, or that he ever paid this amount to the petitioner prior to the circuit court's March 21, 2025, ruling. Rather, on that date, the circuit court corrected its prior order of January 5, 2018, and reduced this amount to judgment, adding that the $1,499.09 had not incurred postjudgment interest. The circuit court further determined that the evidence did not support the respondent's position that he had paid this amount at any point between January 5, 2018, and March 21, 2025, and thus it would *not* be ordering him to pay this sum twice by making this correction. As for the circuit court's determination that he had not made the payment, we again defer to the circuit court as the finder of fact. *Gabriel*, 2020 IL App (1st) 182710, ¶ 42.

¶ 29 Turning to the respondent's position that he should not have to pay postjudgment interest because he has no income, we refer to our previous determination that the circuit court did not err in computing the respondent's income for child support purposes. Pursuant to our Code of Civil Procedure, "judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied." 735 ILCS 5/2-1303 (West 2022). Unpaid child support payments are considered judgments. See *In re Marriage of Hyman*, 2024 IL App (2d) 230352, ¶ 25 (discussing *Illinois Department of Healthcare & Family Services ex rel. Wiszowaty v. Wiszowaty*, 239 Ill. 2d 483, 488-89 (2011)).

¶ 30 Thus, not only did the circuit court properly impose statutory interest, but it lacked discretion to *not* include it. *Id.* ¶¶ 27-28 (explaining that the statutory interest provided by section 2-1303 of the Code of Civil Procedure is mandatory, and the court lacks authority to limit the

10

accrual of interest imposed by statute). As nothing in the record or in the respondent's argument on appeal calls into question the circuit court's findings regarding his arrearages, we find no basis for concluding that the court erred by applying the statutory 9% interest rate to its judgments.

¶ 31    Lastly, we address the respondent's fourth argument, in which he implies that he has not been making payments as per the circuit court's March 21, 2025, order because he was not instructed on how to do so. He contends that this is due to the circuit court's denial without explanation of his motion for clarification. However, his motion for clarification did not include any statements asking for instruction on how to make payments. Rather, as the circuit court correctly noted, the motion challenged its findings and disputed the amount owed, thus asking for reconsideration of its prior ruling. Furthermore, the record shows that the respondent did, at times, make child support payments to the petitioner, indicating that he was familiar with the process. Therefore, this argument lacks merit.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, the circuit court did not err in calculating the respondent's arrearages and determining the amount of his child support obligation. The judgment of the circuit court is affirmed.

¶ 34    Affirmed.