NOTICE

Decision filed 06/21/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200168-U

NO. 5-20-0168

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| WILLIAM R. WHITAKER, | ) | Jackson County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 15-D-63 |
| | ) | |
| MARYSSA A. WHITAKER, | ) | Honorable |
| | ) | W. Charles Grace, |
| Respondent-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse the circuit court's judgment regarding the allocation of the parties' parenting time where the circuit court failed to consider the substantial change in the parties' circumstances and reverse that portion of the circuit court's judgment regarding petitioner's child support obligation where the circuit court failed to apply the statutory guidelines in effect at the time of judgment.

¶ 2    Petitioner, William R. Whitaker, and respondent, Maryssa A. Whitaker, were married on February 18, 2009, and two children[1] were born of the marriage. On April 10, 2015, petitioner filed a petition for dissolution of marriage. Although both parties filed proposed parenting plans, no agreed parenting plan was submitted to the circuit court. As such, the circuit court held a hearing

---

[1]H.A.W. born on September 2010 and H.K.W. born on April 2013.

1

on February 1 and 2, 2017, and entered a written order on March 2, 2018, determining, *inter alia*, the parties' parenting time and petitioner's child support obligation.

¶ 3 Petitioner appeals the circuit court's order arguing that the circuit court erred in entering an order regarding parenting time without the entry of a parenting plan and that the circuit court's judgment allocating the parties' parenting time was against the manifest weight of the evidence. Petitioner also argues that the circuit court's determination of child support and arrearage was against the manifest weight of the evidence. For the following reasons, we reverse those portions of the circuit court's March 2, 2018, judgment regarding parenting time and child support.

¶ 4                                    I. BACKGROUND

¶ 5 Only the background relevant to the issues on appeal concerning the allocation of parenting time and child support are provided within this section. Petitioner and respondent were married on February 18, 2009, and two children were born of the marriage. On April 10, 2015, petitioner filed a petition for dissolution of marriage.

¶ 6 On May 13, 2015, the circuit court directed the parties to participate in mediation regarding the dissolution of marriage. The mediator's report filed on June 24, 2015, indicated that the mediation was not conducted since neither party contacted the mediator. On September 17, 2015, the circuit court issued an order directing the parties to mediate regarding the parties' disputes concerning custody and visitation of the children. The mediator's report filed on April 18, 2016, indicated that the parties did participate in mediation but could not reach an agreement concerning the allocation of parental responsibilities. On July 27, 2016, petitioner filed an amended petition for dissolution of marriage.

¶ 7 On August 10, 2016, the circuit court entered an agreed temporary order regarding the parties' parenting time. The agreed temporary order directed that the parties would have parenting

2

time on alternate weekends and that petitioner would have the children from 7:30 a.m. until 5:15 p.m., Monday through Friday, and overnight on Wednesdays. It also provided a deviation from that schedule in that petitioner would have the children from 5:15 p.m. on July 22, 2016, through 7:30 a.m. on July 25, 2016; 7:30 a.m. on July 29 through 5:15 p.m. on August 2, 2016; 7:30 a.m. until 5:15 p.m. on August 3, 2016; and Labor Day 2016. Respondent would have the children from 5:15 p.m. July 25 through 7:30 a.m. July 29, 2016; 5:15 p.m. August 2 through 7:30 a.m. August 3, 2016; and 5:15 p.m. August 3 through 7:30 a.m. August 4, 2016.

¶ 8    On February 1 and 2, 2017, the circuit court conducted a hearing on all remaining issues. On March 8, 2017, the circuit court entered a judgment of dissolution of marriage reserving all other issues under advisement. A petition to reopen the evidence was filed by respondent on September 26, 2017. The petition to reopen the evidence stated that, subsequent to the hearing on all remaining issues, respondent had accepted employment in the same school district as the children attended. As such, the need for before and after school care for the children that petitioner had been providing had been eliminated. Respondent's petition to reopen the evidence also noted a change in respondent's income. On the same day, respondent filed a petition to modify the agreed temporary order of August 10, 2016, requesting that the circuit court eliminate petitioner's parenting before and after school except "on Wednesdays which is his overnight, or daycare during the day."

¶ 9    Petitioner filed a response to the respondent's petition to modify the agreed temporary order of August 10, 2016, arguing that the circuit court should maintain the status quo with the exception that respondent is not required to drop the children off with petitioner prior to school on days when school is in session. Petitioner also requested that the circuit court order the parties to alternate scheduled days off for school holidays or other events.

3

¶ 10    On November 2, 2017, the circuit court entered an order modifying the agreed temporary order of August 10, 2016. The modified order indicated that the parties had reached an agreement on respondent's petition to modify the agreed temporary order. The circuit court's order of November 2, 2017, incorrectly stated that the modification was based on a change in petitioner's employment. As such, on November 8, 2017, the circuit court entered a corrected order modifying the agreed temporary order of August 10, 2016 (corrected order), stating that the modification was based on a change in respondent's employment. The corrected order directed that petitioner would have parenting time on alternating weekends, after school on Tuesdays, and overnight on Wednesdays. The corrected order indicated that the modified parenting time was "for the 2017-2018 school year only, subject to final order by the court" and that a holiday schedule was reserved by the circuit court. Finally, the corrected order directed that:

"The evidence is reopened to the extent the court is informed that the Respondent has accepted employment with the Trico School District at the high school and has the same schedule as the children who attend that district."

As such, the circuit court did not reopen evidence concerning the change in respondent's income.

¶ 11    On December 27, 2017, the circuit court entered an agreed order for parenting time during the children's Christmas school breaks. The agreed order directed that petitioner would have parenting time from 10 a.m. on December 25 until 5 p.m. on December 31, commencing 2017 and all odd years thereafter, and respondent would have parenting time for the remainder of the break. Commencing 2018 and all even years thereafter, respondent would have parenting time from 10 a.m. on December 25 until 5 p.m. on December 31, and petitioner would have parenting time for the remainder of the break.

4

¶ 12    The circuit court entered its order on all remaining issues on March 2, 2018. The circuit court noted that the remaining issues were "[p]arenting [p]lan, child support, health care cost for the minor children, allocation of extracurricular activity fees, division of marital property, marital debt and dissipation of assets." The circuit court determined the allocation of the parties' parenting time as follows:

> "At the time of hearing, the parties had agreed that since Petitioner was not working that he would have the children during the day, while Respondent was working. In addition, he was to have the children every other weekend from Friday to Sunday and one night per week over night. All of the testimony by both sides supported this allocation of time and championed the improvement in relationships that was evident and the contentment and happiness of the girls was also evident. The court sees no reason to change this allocation of time at this time."

¶ 13    Concerning child support, the circuit court held that:

> "Petitioner shall pay Respondent the monthly sum of $497 per month, based on 28% of Petitioner's income of $1775.00 from VA Disability. He currently pays support for a child from his first marriage. Despite testimony that the VA income will be reduced by [the dissolution of marriage[2]], Petitioner's testimony without supporting exhibits is all the court has to base the rate, but despite this, the court allows 28%. If the VA income goes down, then the support will be reduced to 28% of the reduced amount. However, because of Petitioner's utter disregard of Respondent and notice to her about things financial and otherwise, once again, it is the order of this court that Petitioner, on the 7th day of each

---

[2]Petitioner testified that his VA income would be reduced after the dissolution of marriage since he would no longer receive compensation for respondent as his dependent.

month, shall provide Respondent a summary of job search and provide any new pay stubs and any other record of income received."

¶ 14    On April 3, 2018, petitioner filed a motion to reconsider, modify, and vacate the circuit court's judgment of March 2, 2018.[3] Petitioner's motion to reconsider requested that the circuit court modify his child support obligation in accordance with the amended guidelines under section 505(a)(1.5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(1.5) (West 2018)), which became effective July 1, 2017. Petitioner's motion to reconsider also argued that the circuit court failed to consider the parties' modified parenting time based upon respondent's change in employment. Respondent filed a response to petitioner's motion to reconsider on April 25, 2018. In her response, respondent argued that the circuit court was aware of the agreed modified order on parenting time and still determined "a time allocation in the children's best interests." Respondent, however, did acknowledge that petitioner's child support obligation should have been determined pursuant to the existing statute and requested an evidentiary hearing on current income and a recalculation of child support pursuant to the current statute.

¶ 15    On March 15, 2019, respondent filed a petition to modify child support stating that petitioner's VA disability compensation was "now in excess of $3,000 per month." Petitioner also filed a motion for modification of child support on April 17, 2019, arguing that the circuit court erred in using his VA disability income when it calculated his child support obligation and erred when it failed to offset his child support obligation to respondent for child support paid for a child

---

[3]Petitioner's motion to reconsider, modify, and vacate provisions of the judgment of dissolution states that he is requesting the circuit court to reconsider the judgment entered on November 7, 2017. No judgment was entered by the circuit court on November 7, 2017, and petitioner's motion addresses the findings of the circuit court's March 2, 2018, judgment. As such, the incorrect date of November 7, 2017, is noted as a clerical error.

that he does not share with respondent. On April 22, 2019, the circuit court's docket entry states that "[petitioner] to pay an additional sum of $350 out of his pay toward the balance of summer vacation." There is no indication that the parties were present in court on April 22, 2019, nor any indication that a motion had been filed by either party regarding the children's summer vacation.

¶ 16    On May 10, 2019, petitioner filed a motion for holiday parenting time for Father's Day. The circuit court's docket entry of August 29, 2019, states:

> "The Court has considered the evidence and the Law set forth by counsel and finds that the Motion for Modification[4] should be denied. *Rose v. Rose*, 107 S. Ct. 2029 (1987), *In re Pope-Clifton*, 355 Ill. App. 3d 478 (4th Dist. 2005), and *In re Wojcik*, [3]62 Ill. App. 3d 144 (2d Dist. 2005)."

The record does not reflect any ruling on petitioner's motion for holiday parenting time for Father's Day and also does not reflect any direct ruling on respondent's March 15, 2019, petition for modification.

¶ 17    On September 9, 2019, respondent filed a petition for rule to show cause stating that petitioner had failed to comply with the circuit court's order of March 2, 2018. According to respondent's petition for rule to show cause, petitioner had failed to pay child support and as of August 2019 was $2982 in arrears. On September 11, 2019, the circuit court issued a rule to show cause order directing petitioner to appear and show cause why he should not be held in contempt of court for failing to comply with the terms of circuit court's order of March 2, 2018.

---

[4]Although not specifically stated in the docket entry, given the case law cited, the circuit court's docket entry of August 29, 2019, denied petitioner's motion for modification filed on April 17, 2019.

7

¶ 18    The circuit court's docket entry of December 3, 2019, indicates that this matter was set for a clerk review[5] on December 9, 2019. On December 10, 2019,[6] the circuit court issued a written order on "several pleadings that are pending."[7] The circuit court's written order of December 10, 2019, denied petitioner's April 3, 2018, motion to reconsider and set child support in the amount of $986.45 per month payable by bank transfer from petitioner's account to respondent's account commencing December 2019. The circuit court reserved the issue of the retroactive application of the "correct child support amount" and "the issues on division of monies received post trial by the Petitioner for retaliatory discharge, a payment schedule on the judgment amount entered for dissipation by the Petitioner and confirm compliance with child support that has accrued and attorney fees on the Petition for Rule to Show Cause." The circuit court did not indicate the manner in which it calculated petitioner's increased child support obligation.

¶ 19    Petitioner filed a motion for reconsideration of the circuit court's December 10, 2019, order on December 31, 2019. In his motion for reconsideration, petitioner argued that the circuit court failed to take into consideration that respondent changed employment to a reduced income rate far below what she had previous made and that the circuit court based his child support on respondent's calculations without allowing for petitioner's other child support obligation or a reduction for shared parenting time. Respondent filed a response on January 13, 2020, arguing that

---

[5]No hearing was conducted prior to the circuit court's December 10, 2019, written order and there is no indication within the record of the documents the circuit court relied upon for its findings.

[6]The circuit court's order is dated December 9, 2019, and file stamped December 10, 2019. The court's docket entries indicate that it was filed on December 10, 2019, and December 13, 2019. As such, we will use the filed stamp date of December 10, 2019, when referring to this order.

[7]Although not specifically stated in the circuit court's December 10, 2019, order, it appears by its ruling increasing petitioner's child support obligation that the circuit court granted respondent's petition to modify child support filed on March 15, 2019.

there was no evidence that her change of employment was made for any improper purpose and that petitioner should not be afforded a credit for other child support that he fails to regularly pay.

¶ 20 On March 5, 2020, the circuit court conducted a hearing on all pending matters and issued a written order on April 7, 2020. The circuit court's written order denied petitioner's motion for reconsideration. It further stated that the circuit court found petitioner in indirect civil contempt for failing to pay the child support previously ordered by the circuit court. As such, the circuit court entered judgment in favor of respondent in the amount of $2959.38 for child support for January, February, and March 2020. The circuit court ordered that the child support of $984.46 was retroactive to the date of respondent's petition to modify and awarded the amount of $4387.14 for child support that accrued in 2019, using the new amount. The circuit court then awarded respondent $588 for her attorney fees in enforcing the child support order, $1097.25 as her portion of petitioner's retaliatory discharge settlement, and $5000 towards the dissipation judgment. Finally, the circuit court order directed that:

> "Payment on the balance due on the judgment contained in the Order of March 2, 2018, and the amount [$4387.14 for child support that accrued in 2019], shall commence the month that Petitioner no longer has a child support obligation, with the monthly bank transfer to continue each month until all sums have been paid in full."

¶ 21 Petitioner now appeals the circuit court's March 2, 2018, order arguing that the circuit court erred in entering an order regarding parenting time without the entry of a parenting plan and that the circuit court's judgment allocating the parties' parenting time was against the manifest weight of the evidence. Petitioner also argues that the circuit court's determination of child support in its order of March 2, 2018, and subsequent order of December 10, 2019, was against the manifest weight of the evidence.

9

¶ 22                                    II. ANALYSIS

¶ 23                             A. Parental Responsibilities

¶ 24    The first issue petitioner raises on appeal is whether the circuit court's March 2, 2018, order regarding parenting time, without an entry of a parenting plan, was against the manifest weight of the evidence and an abuse of discretion. According to petitioner, the circuit court failed to address the parties' parental responsibilities other than finding that the children's best interests were served by the parenting time schedule the parties had followed at the time of the hearing. Petitioner argues that, regardless of the parenting time determined by the circuit court to be in the best interest of the children, the circuit court was required to set forth a parenting plan that met the requirements and contents of section 602.10(f) of the Act. 750 ILCS 5/602.10(f) (West 2018). Petitioner also argues that there is no indication in the circuit court's March 2, 2018, order that it considered any of the factors required by sections 602.5 and 602.7 of the Act. *Id*. §§ 602.5, 602.7.

¶ 25    Respondent argues that the parenting time allocated by the circuit court was supported by the evidence and not against the manifest weight of the evidence. In her brief, respondent addresses each of the legislative factors that the circuit court was required to consider pursuant to section 602.7 of the Act (*id*. § 602.7) and argues that each factor supported the circuit court's findings concerning the allocation of the parties' parenting time. Respondent does acknowledge that the circuit court made no ruling on how major decisions involving the children should be made as required by section 602.5 of the Act (*id*. § 602.5) and agrees that this matter should be remanded to the circuit court with directions to reopen the evidence for a ruling on the parties' involvement in decision-making.

¶ 26    The Act (750 ILCS 5/101 *et seq.* (West 2018)) governs the procedures for the dissolution of a marriage including the issues of parental responsibilities and child support for children born

of the marriage. "Parental responsibilities" is defined by the Act as meaning "both parenting time and significant decision-making responsibilities with respect to a child." *Id*. § 600(d). The Act requires that all parents, either jointly or separately within 120 days after service or the filing of any petition for allocation of parental responsibilities, file a proposed parenting plan. *Id*. § 602.10(a). The proposed parenting plan must meet, at a minimum, the requirements of section 602.10(f) of the Act. *Id*. § 602.10(f). If the parents file an agreed upon parenting plan prior to the entry of a judgment of dissolution of marriage, the agreed parenting plan is binding upon the circuit court unless the circuit court finds that the agreement is not in the best interests of the child. *Id*. § 602.10(d).

¶ 27 Where the parties have not submitted a mutually agreed parenting plan for the circuit court's approval, the Act requires the circuit court to conduct an evidentiary hearing and to allocate the parties' parental responsibilities in accordance with the best interests of the child. *Id*. § 602.10(b), (e). Petitioner argues, however, that regardless of the parenting time that the circuit court may have determined to be in the children's best interests, the circuit court was required to set forth its determination in a parenting plan that met the requirements and contents of section 602.10(f) of the Act. *Id*. § 602.10(f). We disagree.

¶ 28 Section 602.10(d) of the Act places the requirement for submitting a parenting plan on the parents, not the circuit court. "The parents must submit the parenting plan to the court for approval ***." *Id*. § 602.10(d). The Act only requires that the circuit court "shall take the parenting plans into consideration when determining parenting time and responsibilities at trial or hearing." *Id*. § 602.10(g). Petitioner cites specially to section 602.10(f)(2) in his reply brief, but again, the requirements of section 602.10(f) pertain to parenting plans required to be submitted by the parents, not the circuit court. Section 602.10(f)(2) contains no requirement requiring the circuit

11

court to enter a parenting plan. Petitioner has provided no statutory law or precedent to support his argument that the circuit court was required to set forth a parenting plan that met the requirements and contents of section 602.10(f) of the Act, and as such, petitioner's argument is without merit.

¶ 29    The case at bar, however, demonstrates how a circuit court could benefit from using section 602.10(f) as a guide. In this case, the circuit court failed to allocate any significant decision-making responsibilities to the parties. Section 602.5 of the Act requires the circuit court to allocate to one or both parents the significant decision-making responsibility for issues affecting the child to include, without limitation, education, health, religion, and extracurricular activities.[8] *Id.* § 602.5. Because the circuit court failed to address this requirement, this matter must be remanded with directions to reopen the evidence for a determination on the parties' involvement in decisions affecting the well-being of the children.

¶ 30    Although the circuit court failed to address the parties' decision-making responsibilities, it did allocate the parties' parenting time. Petitioner argues that the circuit court's March 2, 2018, order regarding parenting time was against the manifest weight of the evidence. According to petitioner, the testimony presented at the hearing indicated that both petitioner and respondent were committed to their children and that an equal parenting time schedule was feasible, appropriate, and ultimately in the children's best interests. As such, petitioner argues that he should have been awarded 50/50 parenting time. Petitioner also argues that the circuit court failed to consider the substantial change in circumstances that occurred after the hearing when respondent changed her employment. Finally, petitioner argues that there is no indication in the circuit court's

---

[8]The circuit court's judgment of March 2, 2018, directed the costs of any extracurricular activities' fees to be paid equally but did not provided for any decision-making regarding those activities.

12

March 2, 2018, order that it considered any of the factors required by sections 602.5 and 602.7 of the Act. *Id*. §§ 602.5, 602.7.

¶ 31 In allocating parenting time, the Act requires a circuit court to consider all relevant factors, including (1) each parent's wishes; (2) the child's wishes; (3) the amount of time that each parent spent performing caretaking functions with respect to the child in the 24 months preceding the filing of any petition for allocation of parental responsibilities; (4) any prior agreement or course of conduct between the parents relating to caretaking functions; (5) the interaction and interrelationship of the child with his parents and siblings and with any other person who may significantly affect his best interests; (6) the child's adjustment to his home, school, and community; (7) the mental and physical health of all individuals involved; (8) the child's needs; (9) the distance between the parents' residences; (10) whether a restriction on parenting time is appropriate; (11) the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household; (12) each parent's willingness and ability to place the child's needs ahead of his or her own; (13) each parent's willingness and ability to facilitate and encourage a close and continuing relationship between the other parent and the child; (14) the occurrence of abuse against the child or other member of the child's household; (15) whether one parent is a sex offender or resides with a sex offender; (16) the terms of the parent's military family-care plan if a parent is a member of the United States Armed Forces who is being deployed; and (17) any other factor that the court expressly finds to be relevant. *Id*. § 602.7. The circuit court must consider the above relevant factors when determining the best interest of a child; however, the circuit court is not required to make explicit findings or specific reference to each factor since we presume that a circuit court knows the law and follows it accordingly. *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43. The only requirement is that

13

the record reflect evidence of the factors considered by the court before making its decision. *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 424 (1991).

¶ 32    Further, a circuit court's decision regarding the allocation of parenting time is accorded great deference. *In re Marriage of Whitehead*, 2018 IL App (5th) 170380, ¶ 15. We will not overturn the circuit court's decision regarding parenting time unless the circuit court abused its considerable discretion, or its decision is against the manifest weight of the evidence. *Id.* A judgment is against the manifest weight of the evidence only if an opposite conclusion is apparent or the findings appear unreasonable, arbitrary, or not based on the evidence. *In re Custody of K.P.L.*, 304 Ill. App. 3d 481, 488 (1999).

¶ 33    In this matter, we find that the circuit court's judgment regarding the allocation of parenting time was against the manifest weight of the evidence because it was not based upon the evidence before the circuit court at the time the judgment was issued. The circuit court held:

> "*At the time of hearing*, the parties had agreed that since Petitioner was not working that he would have the children during the day, while Respondent was working. In addition, he was to have the children every other weekend from Friday to Sunday and one night per week over night. All of the testimony by both sides supported this allocation of time and championed the improvement in relationships that was evident and the contentment and happiness of the girls was also evident. The court sees no reason to change this allocation of time at this time." (Emphasis added.)

¶ 34    The hearing was conducted on February 1 and 2, 2017, and the circuit court did not issue its order until March 2, 2018. During the interceding year, the circuit court reopened evidence regarding respondent's employment within the children's school district that eliminated the need for before and after school care that petitioner had been providing for the children. As such, the

14

circuit court clearly failed to consider the evidence presented upon the reopening of proofs which demonstrated circumstances affecting the parties' parenting time other than those presented at the time of the hearing. The finding by the circuit court on March 2, 2018, that petitioner would have the children "during the day while respondent was working" was against the manifest weight of the evidence since the children were now in school for the same period that respondent was working. Even on non-school days, petitioner's award of parenting time "during the day while respondent was working" was moot since respondent would not be working on non-school days.

¶ 35    Therefore, we need not address each of the factors that the circuit court was required to address at the hearing concerning the best interests of the children since the circuit court should have been aware of the change to several of those factors when issuing its ruling on the parties' parenting time. As such, we find that portion of the circuit court's judgment of March 2, 2018, regarding parenting time was against the manifest weight of the evidence. We also note that, other than an agreed order concerning the children's Christmas school break entered by the circuit court on December 27, 2017, the circuit court did not address any holidays, summer vacations, or other school breaks in its finding on the parties' parenting time.

¶ 36    Based on the above, we reverse that portion of the circuit court's March 2, 2018, order concerning the parties' parenting time and remand this matter with directions for the circuit court to consider all the evidence, including respondent's change in employment, in determining the parties' parenting time in the best interest of the children. We also direct the circuit court to include the children's school breaks and major holidays in its determination of the parties' parenting time. Finally, we would strongly encourage the parties to submit an agreed parenting plan for the circuit court's consideration.

¶ 37                              B. Child Support

¶ 38    In its order of March 2, 2018, the circuit court directed petitioner to pay respondent the monthly sum of $497 per month, based on 28% of petitioner's income of $1775 from his VA disability income. On December 10, 2019, the circuit court entered an order increasing petitioner's child support obligation to the amount of $986.46 per month. Petitioner argues that the circuit court ordered the increased amount of child support without providing any method of calculation and failed to credit petitioner with child support paid for a child he does not share with respondent. Petitioner also argues that the circuit court's calculations did not include a shared physical care adjustment. As such, petitioner argues that the circuit court's determinations on child support were against the manifest weight of the evidence.

¶ 39    Respondent argues that the increased amount of child support is consistent with section 505 of the Act, but respondent also does not provide any citation to the record to indicate the manner in which the circuit court based its determination. Respondent states that the circuit court correctly disallowed petitioner's other child support obligation adjustment since the evidence indicated that petitioner did not regularly pay the child support. Respondent also argues that petitioner was not entitled to the shared physical care adjustment since he did not have the children over 146 nights per year.

¶ 40    The circuit court has discretion to determine the appropriate amount of child support, including whether to deviate from the statutory guidelines, and we will not reverse the court's determination absent an abuse of that discretion. *In re Marriage of Gabriel*, 2020 IL App (1st) 182710, ¶ 56. "Whether the court applied the correct statutory formula in determining the parties' respective incomes for child support purposes, however, is a question of law that we review *de novo*." *Id.*

16

¶ 41    Until June 30, 2017, section 505(a)(1) of the Act provided that a court shall determine the minimum amount of support by using the guidelines set forth in section 505(a)(1). 750 ILCS 5/505(a)(1) (West 2016). At the time of the circuit court's hearing on February 1 and 2, 2017, section 505(a)(1) guidelines set 28% of the supporting party's net income as the correct amount of child support for two children. *Id.*

¶ 42    Effective July 1, 2017, however, the guidelines were amended to state:

> "(1.5) Computation of basic child support obligation. The court shall compute the basic child support obligation by taking the following steps:
>
> (A) determine each parent's monthly net income;
>
> (B) add the parents' monthly net incomes together to determine the combined monthly net income of the parents;
>
> (C) select the corresponding appropriate amount from the schedule of basic child support obligations based on the parties' combined monthly net income and number of children of the parties; and
>
> (D) calculate each parent's percentage share of the basic child support obligation." 750 ILCS 5/505(a)(1.5) (West 2018).

¶ 43    As such, there was a change to the statutory child support guidelines from the time of the circuit court's hearing on February 1 and 2, 2017, until it issued its order on March 2, 2018.[9] The circuit court's order was not issued until March 2, 2018, when the new statutory guidelines were in effect. *Id.* § 801(b) ("This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered."). As such,

---

[9]Neither party cites to the record to indicate that the circuit court entered an order regarding child support prior to March 2, 2018. This court could also not locate any order, including any temporary orders, regarding child support prior to March 2, 2018.

the circuit court was required to apply the new statutory guidelines in its determination of petitioner's child support obligation. Although the circuit court could have deviated from either of the statutory guidelines, any such deviation would have been required to be accompanied by written findings by the circuit court specifying the reasons for the deviation and the presumed amount under the child support guidelines without a deviation. *Id.* § 505(a)(3.4); 750 ILCS 5/505(a)(2) (West 2016). The circuit court in this matter did not make any written findings to indicate that it deviated from the statutory guidelines. As such, we find that the circuit court erred in calculating petitioner's child support obligation at 28% of petitioner's net income ($497 per month) in its March 2, 2018, judgment.

¶ 44    Concerning the circuit court's order of December 10, 2019, increasing petitioner's child support obligation to the amount of $986.46 per month, we cannot determine whether the circuit court applied the correct statutory formula since neither party has cited to the record, nor indicated in their briefs, the evidence needed for our review of the circuit court's determination. The record on appeal does not include any child support obligation worksheet completed by the circuit court or any indication within the record of proceedings wherein the circuit court stated the basis for its calculation of the increase in child support other than the increase in petitioner's VA disability income. As stated above, we presume that a circuit court knows the law and follows it accordingly (*Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43), and normally, we resolved any doubts which may arise from the incompleteness of the record against the appellant. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

¶ 45    In this case, however, we have already determined that the circuit court failed to follow the proper statutory guidelines in its initial order regarding petitioner's child support obligation. Petitioner correctly points out that the record is devoid of what standards, calculations, or any

18

deviation the circuit court applied increasing petitioner's child support, and this court cannot determine whether the circuit court followed the appropriate statutory guidelines. Thus, the lack of indication by the circuit court on the basis for its findings, coupled with the improper calculation of petitioner's initial child support obligation, leads us to a finding that the circuit court's order of December 10, 2019, must be reversed.

¶ 46    Also, as noted above, we have already determined that this matter must be remanded with directions for the circuit court to address the parties' parenting time. Under the current statutory guidelines, if each parent exercises 146 or more overnights per year with the child, the basic child support obligation is multiplied by 1.5 to calculate the shared care child support obligation. The circuit court would then determine each parent's share of the shared care child support obligation based on the parent's percentage share of combined net income.  The child support obligation is then computed for each parent by multiplying that parent's portion of the shared care support obligation by the percentage of time the child spends with the other parent. The respective child support obligations are then offset, with the parent owing more child support paying the difference between the child support amounts. 750 ILCS 5/505(a)(3.8) (West 2018). Thus, the circuit court's order on remand concerning the parties' parenting time, including the allocation of the children's school break and the amount of parenting time that petitioner has already exercised, could well affect petitioner's support obligation.

¶ 47    Accordingly, we reverse that portion of the circuit court's March 2, 2018, judgment and any subsequent orders regarding child support and arrears, and remand the matter with directions for the court to determine the appropriate amount of child support under the statutory guidelines effective July 1, 2017, the amount petitioner paid, and any necessary adjustments to arrears.

19

¶ 48    Petitioner also states that the directed method of payment for his child support (payable by bank transfer from petitioner's account to respondent's account) was against the manifest weight of the evidence. Said statement is the total sum of petitioner's argument on the method of payment for his child support. Petitioner's brief on this issue is devoid of any citations to the record and fails to explain what authority supports his claim of error regarding the directed method of payment. A reviewing court is entitled to have all the issues clearly defined, and be provided with meaningful, coherent argument and citation to pertinent authority. See *Schwartz v. Great Central Insurance Co.*, 188 Ill. App. 3d 264, 268 (1989). As such, petitioner has failed to articulate any legal argument which would allow a meaningful review of this alleged error.

¶ 49    Finally, we note that section 505(g) of the Act requires that an order for support include a date on which the current support obligation terminates. 750 ILCS 5/505(g) (West 2018). The termination date shall be no earlier than the date on which the child attains the age of 18, or no earlier than the date on which the child's high school graduation will occur, or the date on which the child will attain the age of 19. *Id*. In this case, the circuit court did not set a date for the termination of petitioner's child support. As such, we remind the circuit court to include a termination date within the child support order issued upon remand. We further remind the circuit court that if it finds that a deviation from the child support guidelines is appropriate, it must provide written reasoning and specify the amount that would have been required under the guidelines. *Id*. § 505(a)(3.4).

¶ 50    Our decision in this matter is limited to the issues on appeal of parental responsibilities and child support. All remaining portions of the circuit court's judgments in this matter remain in full force and effect.

¶ 51                                   III. CONCLUSION

¶ 52    For the foregoing reasons, we reverse that portion of the circuit court's March 2, 2018, order concerning the parties' parenting time and remand this matter with directions for the circuit court to consider all the evidence, including the change in respondent's employment, in its determination of the parties' parenting time. We also direct the circuit court to include the children's school breaks and holidays in its parenting time determination. We further reverse that portion of the circuit court's order of March 2, 2018, and any subsequent orders, regarding child support and arrears, for a determination of petitioner's child support obligation pursuant to section 505(a)(1.5) of the Act effective July 1, 2017. Finally, we remand this matter with directions to the circuit court to issue a determination regarding the parties' decision-making responsibilities pursuant to section 602.5 of the Act (*id*. § 602.5).


¶ 53    Reversed and remanded with directions.