2022 IL App (2d) 200670-U
No. 2-20-0670
Order filed February 17, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF KARIANN ADAMIK, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 14-MR-136 |
| | ) | |
| WILLIAM P. KIECA, | ) | Honorable |
| | ) | Timothy J. McJoynt, |
| Respondent-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in its calculation of William's income for purposes of his petition to reduce child support, or in its denial of Kariann's petition for rule to show cause. Therefore, we affirm.

¶ 2    Petitioner, Kariann Adamik, and respondent, William P. Kieca, were married in 1997, and their marriage was dissolved in 2009. Kariann appeals from the trial court's postdissolution orders modifying William's child support obligation and denying her petition for rule to show cause. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       During their marriage, the parties had four children. The August 3, 2009, dissolution judgment incorporated the parties' marital settlement agreement (MSA) and joint parenting agreement (JPA). The JPA provided that the parties would have joint custody of the children, with Kariann having residential custody. The MSA stated that based on William's income of $90,000, he was to pay $2069 per month in child support, and additionally pay 40% of the income he received from bonuses or commissions within 14 days of receipt. The parties were equally responsible for certain expenses such as daycare, extracurricular activities, and unreimbursed medical expenses. The parties subsequently engaged in extensive postdecree litigation.

¶ 5       On June 8, 2011, the trial court entered an agreed order modifying William's child support obligation to $1011.69 biweekly ($2192 monthly). He was also to pay $500 per month from his side business, Inlet Solutions Group Inc, for a total of $2692 per month.

¶ 6       On March 13, 2013, the trial court entered an agreed order increasing William's child support obligation to $1152 biweekly ($2496 monthly). With the additional child support of $500, William's total child support obligation was $2996 per month.

¶ 7       An agreed order entered on July 31, 2013, reduced William's additional child support from his side business from $500 monthly to $200 monthly. His monthly child support payments therefore totaled $2696.

¶ 8       On May 9, 2014, the trial court entered an agreed order that eliminated William's additional child support based on his representation that his corporation was dissolved. His child support was amended to $2881 per month plus $37 per month for the children's insurance payments, for a total of $2918. This amount changed slightly in an agreed order dated July 1, 2014, to a total of $2854 per month.

¶ 9    On October 18, 2018, following the emancipation of the parties' eldest child, William's base child support was reduced to $1850 monthly. With the $37 monthly health insurance, the total monthly child support was $1887. The reduction was subsequently made retroactive to May 22, 2018.

¶ 10    The trial court entered an agreed order on November 19, 2019, that kept William's base child support at $1850 monthly. The parties agreed to perform an annual true-up beginning in April 2020. The parties were to exchange the front page of their federal tax returns and all attachments by April 15 every year, then within 14 days calculate the child support owed using the "HFS Income Shares Calculator," and then pay any underpayment or repay any overpayment within 30 days. William continued to be responsible for 50% of the children's unreimbursed medical expenses. The order also set forth the parties' obligations for the eldest child's college expenses.

¶ 11    On May 15, 2020, William filed a petition to reduce child support based on the parties' second son turning 18 and graduating from high school the following month.

¶ 12    On May 20, 2020, Kariann filed a *pro se* petition for rule to show cause, alleging that William had failed to pay her $1738 due from the April 2020 true-up for 2019 child support. Kariann attached William's 2019 W-2 to the petition.

¶ 13    A hearing on the two May 2020 petitions took place on October 13, 2020. Kariann continued to represent herself *pro se*. William's petition to reduce child support was heard first. Kariann testified that she worked for the Chicago White Sox as the manager of financial analysis. She identified her financial affidavit and her June 12, 2020, pay stub. William identified his financial affidavit and his May 29, 2020, pay stub.

¶ 14    On cross-examination, Kariann asked William if his gross income in his financial affidavit included his voluntary 401(k) contributions. William responded that it was the number from his

tax return and, as far as he knew, it was correct. Kariann also questioned why his 2019 W-2 reflected a different number. William replied that he did not have the document in front of him and did not know. Kariann asked questions about William's bonus, and he testified that it was discretionary but he had received a 10% bonus consistently over the past five years. Kariann questioned why the bonus was not included in his gross income on his financial affidavit, and William testified that he interpreted the affidavit as requiring his gross income from his tax return. Kariann asked if that number excluded his 401(k) contributions, and William testified, "I don't know. I am not an accountant."

¶ 15    On redirect examination, William testified that his annual bonus was reflected in his May 29, 2020, pay stub. It showed that his bonus was $15,739.06.[1]

¶ 16    The trial court asked William if he believed that his gross annual income with his bonus was $151,000 per year, and William replied in the affirmative, stating that he relied on his tax return. Kariann told William that his base pay of $7263 "annualized" alone was $151,000 and that the $16,000 bonus was beyond that amount, and she asked if he was aware of the disparity. William said no and that he filled out the financial affidavit the way he thought he was supposed to fill it out.

¶ 17    In closing argument, William's attorney argued that multiplying the parties' hourly pay rates indicated that William had a monthly income of $12,589.20, and Kariann had a monthly income of $7,708.34. He argued that child support should be set using the parties' base pay rates because bonuses were accounted for by the annual true-up provision. Kariann argued in closing that the child support calculation should include William's annual bonus because he had consistently received a 10% bonus for the previous five years. She argued that if the parties waited

_____

[1] In her brief, Kariann states that this was William's 2019 bonus, payable in 2020.

until the annual true- up, William would have "the luxury of holding onto that bonus and not paying out to child support for an entire year." Kariann further argued that William's financial affidavit did not include his "bonus and his gross income from the prior year" and that it was not accurate because it did not include "his voluntary 401(k) [contributions] that [were] potentially $17,000 which should have been included within the child support calculation."

¶ 18    The trial court ruled that William's child support calculations were correct, and it set child support to $1686 per month retroactive to July 31, 2020.

¶ 19    The trial court then proceeded to hear Kariann's petition for rule to show cause. In her opening statement, Kariann argued that the true-up procedure for 2019 required William to pay $1905.56 in additional child support, but he paid only $166.76, leaving a balance of $1,738.80. She argued that although William's attorney sent her an e-mail stating that the support was based on taxable income, the court order stated that the support was based on gross income. Kariann asserted that otherwise, William was getting a $17,000 reduction to his income for his voluntary 401(k) contributions.

¶ 20    On her own direct examination, Kariann testified that William's attorney said that William's taxable income should be taken from box 1 of his W-2, but that amount was his taxable income that did not include his voluntary 401(k) contributions, and thus was not an accurate reflection of his gross income. The trial court took judicial notice of a printout that Kariann introduced from the Internal Revenue Service's (IRS) website that she asserted showed the definition of what box 1 is. The printout stated that box 1 did not include elective 401(k) contributions.

¶ 21    William declined to cross-examine Kariann, and the trial court then questioned her. In response, she testified that she believed that William's income was $162,257 for 2019 and about

$166,000 for 2020. They then discussed William's W-2, which Kariann had attached to her filing but did not seek to admit into evidence. She testified that box 5 on the W-2 showed William's gross income, including his 401(k) contributions. The trial court stated, "I guess I should have heard these two motions together, and that it was going to "*sua sponte* reopen the proofs in the first motion." It stated that it seemed that box 5 was the correct box to use to determine William's income.

¶ 22    William's attorney stated that he used William's box 1 wages from his 2019 1040, which were $144,889. The trial court questioned why box 5 showed wages of $162,000, and Kariann stated that "Box 12 of the D" stated that the elective deferrals were $17,000 for the year. The trial court stated, "I don't know what that means" and "I am not an accountant." Kariann started speaking, and the trial court stated, "And you are not, either." Kariann stated that she was, and the trial court questioned whether she was a C.P.A. Kariann stated that she was not a C.P.A. but was an accountant. The trial court stated that she had not testified to those qualifications. William's attorney stated that William had $290.52 withheld every two weeks for his 401(k), and the trial court stated that it assumed that $290 multiplied by 26 equaled $11,466.[2] Kariann stated that that number did not line up with his pay stub, because it showed that halfway through the year he had already put $7000 into his 401(k).

¶ 23    The trial court concluded:

---

[2] The trial court specifically stated, "That comes up to [$]11,466, I assume. 290 times 26." This calculation was incorrect, as $290 x 26 equals $7,540. Rather, it appears that the trial court subtracted William's base income of $151,000, from the amount in box 5 of William's 2019 W-2, which was $162,466, to arrive at $11,466.

"I got 162,466. That's Box 5. \*\*\*

Here is what I am ordering. I am vacating the proofs of the last hearing. His gross income is \$162,466. Calculate the child support on that. That's the new calcs. Everything else that I said in my ruling stays the same.

As to this Rule to Show Cause petition, I have heard virtually no evidence that he violate—willfully violated a Court Order, so I am denying the Rule to Show Cause."

¶ 24   Kariann stated that under the trial court's ruling, they were using gross income instead of taxable income for ongoing child support, but William was still getting a reprieve because his 401(k) contributions were not being included for the 2019 true-up. The trial court responded, "I can't give you legal advice as to what you should have filed instead of a Rule to Show Cause motion," but it was "fixing the child support thing because I think you are right on Box 5."

¶ 25   The trial court entered a written order the same day granting William's petition to reduce child support. It stated that retroactive to August 7, 2020, William was to pay \$778.93 biweekly (equaling \$1687.68 monthly) for child support, based on William's gross annual income of \$162,466 and Kariann's gross annual income of \$92,500. The trial court denied Kariann's petition for rule to show cause.

¶ 26   Kariann timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28                          A. Petition to Reduce Child Support

¶ 29   Kariann first challenges the trial court's calculation of William's income for purposes of his petition to reduce child support. We presume that a trial court's determinations in awarding child support are correct, and we will not reverse its findings as to income or its awards unless the

trial court abused its discretion. *In re Marriage of Lugge*, 2020 IL App (5th) 190046, ¶ 15. Similarly, the trial court has considerable discretion in support modification proceedings, and its orders will generally not be disturbed absent an abuse of discretion. *In re Marriage of Stoker*, 2021 IL App (5th) 200301, ¶ 77. A ruling is an abuse of discretion where it is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the same view. *In re Marriage of Gabriel & Samoun*, 2020 IL App (1st) 182710, ¶ 39.

¶ 30    Kariann highlights that the November 19, 2019, agreed order stated that the parties would use "their respective gross monthly incomes to determine a monthly child support obligation." She argues that William's gross base hourly income at the time of trial was $72.63, which multiplied by 40 hours per week for 52 weeks equals $151,070. The trial court used a rounded number of $151,000.

¶ 31    Kariann argues that the trial court erred in calculating William's anticipated 401(k) contributions, which it then added to his base income. See 750 ILCS 5/505(a)(3)(D)(iii) (West 2020) (excluding only mandatory retirement contributions from income). She argues that it simply took the single biweekly contribution noted on his May 29, 2020, pay stub, which was $290.52, and multiplied it by 26, erroneously calculating that this equaled $11,466 ($290.52 x 26 = $7,553.52), and adding it to get a base income of $162,466. Kariann argues that the trial court disregarded her protest that the calculation did not square with the pay stub's year-to-date total 401(k) contributions of $7,000. She argues that $7,000 divided by the 20 weeks of 2020 that had already passed equals a contribution of $700 biweekly, more than two times the amount used by the trial court. Kariann maintains that extrapolated over the entire year ($700 times 26 weeks), the figure is $18,200 per year in 401(k) contributions, which is consistent with William's 2019 401(k) contributions of $17,497.25. Kariann argues that when the $18,200 is added to William's gross

base annual income of $151,070, it equals $169,270, and not the $162,466 figure used by the trial court. She asserts that a trial court's error in calculating child support is grounds for reversal. See *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 182710, ¶¶ 57, 66.

¶ 32    Kariann contends that in addition to William's gross base annual income and the $18,200 in anticipated voluntary 401(k) contributions, the trial court should have added his anticipated 10% annual bonus of $15,107, for a total income for child support purposes of $184,377. Kariann maintains that the evidence showed that William had received a 10% annual bonus for each of the preceding five years, such that it was error for the trial court to disregard this component of his compensation in setting his modified child support obligation. She argues that allowing him to hold his bonus all year before sharing it with his children via the parties' annual true-up is not reasonable.

¶ 33    William counters that Kariann failed to properly prepare exhibits and testimony for the October 13, 2020, hearing and now wants this court to redetermine the trial court's ruling. He asserts that Kariann asks that we accept that William's annual 401(k) contributions are $18,200, which is an amount she argues is consistent with his 2019 401(k) contributions based on a document that was never admitted into evidence. William argues that the trial court did account for his 401(k) contributions in a number that was greater than what he testified to ($7,553.52) but less than the $18,200 that Kariann now proposes.

¶ 34    Regarding his bonus, William argues that there was no evidence on which Kariann can base her assertion that it should be added to his hourly rate. He maintains that she elicited no testimony about his earnings. He argues that Kariann's own exhibit from the IRS instructions states that box 1 on the W-2 reflects all earnings, including wages and bonuses. William further argues

that the existence of the true-up provision in the November 19, 2019, agreed order ensures that his bonus will be counted every year, as will any fluctuations in either party's income.

¶ 35 We conclude that the trial court acted in its discretion in setting William's child support based on an annual income of $162,466 for William. It is true that William's pay stub for the period of May 10, 2020, to May 23, 2020, lists $7,013.19 as a year-to-date total for his 401(k), which would be about $700 per biweekly pay period, but it also lists a deduction of $290.52 for the 401(k) for the pay period and a year-to-date employer match of $3,287.31 and $145.26 for the pay period. It is unclear how all these numbers relate, and Kariann did not introduce evidence that would provide an explanation. The trial court instead relied on William's income from box 5 of his 2019 W-2,[3] which appears to include his 401(k) contributions from that year, to determine his annual income. Karen herself testified that she believed that box 5 on the W-2 showed William's gross income, including his 401(k) contributions. The trial court's decision was not arbitrary, fanciful, or unreasonable, meaning that it was not an abuse of discretion. This is especially true given that the parties have an annual true-up provision in their prior agreed order to address any discrepancies in child support.

¶ 36 We also conclude that the trial court did not abuse its discretion in not explicitly adding William's bonus income to his annual income for child support purposes. Kariann did not produce evidence regarding whether the box 5 income listed on the W-2 included William's bonus income.[4]

---

[3] The trial court stated that it was *sua sponte* reopening the proofs for William's petition to reduce child support, apparently to consider the 2019 W-2 as evidence for that petition, and neither party objected.

[4] Kariann later states in her brief that the trial court "explicit[ly] acknowledge[d] that the

Moreover, although Kariann argues that William should not be able to hold onto his bonus for the whole year before paying child support on it, she also states in her brief that William's paystub "showed that he had received for [*sic*] $15,796.06 his 2019 bonus (received in 2020)." If William receives his bonus the following year, he is not holding onto it during the year in which he earned it. Again, the annual true-up provision to which the parties agreed should account for any shortfalls or overpayments.

¶ 37                                    B. Petition for Rule to Show Cause

¶ 38    Kariann next argues that the trial court abused its discretion in not finding that William acted willfully and contemptuously in calculating his 2019 income for purposes of the true-up. Kariann points out that the November 19, 2019, agreed order stated that the parties are to perform a true-up in April of each year for the preceding year's child support. They are to exchange the front page of their federal tax returns and all attachments and calculate child support using "their respective gross monthly incomes." Kariann asserts that in April 2020, she calculated that William owed her $1,906.56 in additional child support for 2019; she attached the support obligation worksheet to the petition for rule to show cause. She argues that William paid her only $166.76 for the 2019 true-up, and he openly admitted in his testimony to using his income of $144,888.75 from box 1 of his W-2, which did not include his $17,497.25 voluntary 401(k) contributions, thereby disregarding the agreed order's explicit requirement that the parties use their gross incomes for the true-up. Kariann maintains that William offered no plausible or reasonable explanation for his actions, but instead essentially pled ignorance.

---

parties' 'Box 5' gross income was what had to be used in calculating support," thereby appearing to agree that use of that gross income was appropriate.

¶ 39    Kariann argues that there was no question of fact as to what William owed for 2019, and it was an abuse of discretion for the trial court to give him a pass on his additional support for that year. Kariann contends that she established that William failed to comply with the agreed order, and that evidence of noncompliance established a *prima facie* case of civil contempt. See *In re Marriage of Scordo*, 176 Ill. App. 3d 269, 273 (1988). Kariann argues that the burden should have then shifted to William to show cause why he should not be held in contempt of court for failure to obey its order. See *id.*

¶ 40    Kariann argues that even if the trial court did not feel that she had shown that William's actions were willful and contumacious, it could still have reached the "right result" by granting her petition for enforcement while denying the contempt. She argues that, otherwise, there is a substantial risk that William will feel empowered to use a deflated income figure in the future in calculating the annual true-up.

¶ 41    William argues that Kariann introduced no evidence of amounts paid in child support in 2019, her 2019 income, William's 2019 income, demand for payment, calculations of amounts owed, willfulness, or anything beyond the IRS instructions for forms W-2 and W-3. William argues that Kariann is again seeking redress from this court for her failure to adequately present her case in the trial court. William argues that Kariann could not meet her burden for a petition for rule to show cause by relying on the allegations of her petition and attachment to the petition that were never admitted into evidence.

¶ 42    In her petition for rule to show cause, Kariann sought a finding that William was in indirect civil contempt for failing to pay all of the child support due for 2019. A party's noncompliance with a court order is prima facie evidence of contempt. *In re Marriage of Sinha*, 2021 IL App (2d) 191129, ¶ 49. The burden then shifts to the contemnor to show that the noncompliance was not

willful. *Id.* A trial court's determination of whether a party has engaged in indirect civil contempt will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *Id.*

¶ 43 Here, we cannot say that the trial court's ruling denying Kariann's petition was against the manifest weight of the evidence or an abuse of discretion. As William highlights, Kariann did not seek to admit into evidence the attachments to her petition or the exhibits from William's petition to reduce child support. She also did not provide or elicit testimony regarding how much child support was due for 2019 and how much William had paid, or seek to have the trial court take judicial notice of the testimony from William's petition. We recognize that Kariann was representing herself *pro se* in the trial court, but parties who choose to represent themselves in Illinois courts are not entitled to more lenient treatment. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. They must instead comply with the same rules as licensed attorneys, and they are held to the same standards. *Id.* In sum, the record before us provides no grounds on which to reverse the trial court's ruling denying Kariann's petition for rule to show cause.

¶ 44                                  III. CONCLUSION

¶ 45 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 46 Affirmed.